153 T.C. No. 8

UNITED STATES TAX COURT

RICHARD E. LACEY, II, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9761-16W.                    Filed November 25, 2019.

P filed a whistleblower claim with the Whistleblower Office ("WBO") of the Internal Revenue Service ("IRS"). The claim contained a one-page narrative that alleged that amounts spent by the target taxpayer, purportedly to remediate an environmental disaster, were in fact spent not to remediate environmental damage but rather to cover it up and to avoid massive fines under an environmental statute. P argued that the remediation expenses were therefore a "deduction that should properly be disallowed". A WBO analyst reviewed P's claim and recommended that it be rejected. Without transmitting the claim to an operating division of the IRS, the WBO rejected P's claim "because the information provided was speculative and/or did not provide specific or credible information regarding tax underpayments or violations of internal revenue laws". P resubmitted the claim and provided additional information to support it, including a 21-page "brief" that gave additional information about the alleged deduction, citations of sources of the information, and a legal explanation of why the expenses should be treated as nondeductible.

The WBO again summarily rejected the claim without referring it to an operating division of the IRS or otherwise considering or addressing its merits.

        Held:  The Court has jurisdiction to review, for abuse of discretion, the WBO's decision to "reject" a claim for failing to meet certain threshold requirements.

        Held, further, a genuine dispute of material fact about whether the WBO considered P's resubmitted claim precludes summary judgment on the question whether the WBO abused its discretion in rejecting that claim.

        Held, further, in the presence of that genuine dispute and in the absence of a complete administrative record, we will deny P's request for a remand.


Richard E. Lacey, II, for himself.

Amanda L. Myers, for respondent.


OPINION


        GUSTAFSON, Judge:  In this whistleblower action, petitioner Richard E. Lacey, II seeks review pursuant to section 7623(b)(4)[1] of the determination by the Whistleblower Office ("WBO") of the Internal Revenue Service ("IRS") to reject a

_____

        [1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986 as in effect at all relevant times (codified in 26 U.S.C., and referred to herein as "the Code"), and all Rule references are to the Tax Court Rules of Practice and Procedure.

claim for an award. The issues before the Court are whether the WBO abused its discretion in rejecting Mr. Lacey's claim and whether the Court should remand this case to the WBO. Respondent, the Commissioner of the IRS, has moved for summary judgment under Rule 121, contending that there are no disputed issues of material fact and that the WBO did not abuse its discretion by rejecting Mr. Lacey's claim for an award under section 7623. Mr. Lacey filed a response in which he opposed the Commissioner's motion and asked that we remand this case to the WBO and order it to analyze, process, and take action on his claim. We will deny the Commissioner's motion and will deny Mr. Lacey's request to remand this case to the WBO for further consideration.

## Background

The parties have not yet submitted a complete administrative record in this case. The following facts are based on the parties' pleadings and other pertinent materials in the record.

According to Mr. Lacey, he was formerly employed at BP in various positions, some of which were at senior levels, and he had worked and interacted with many of BP's decision makers. After Mr. Lacey stopped working at BP, he wrote a book to expose BP's cost cutting that BP later admitted was the cause of an environmental disaster.

The first submission

On May 11, 2015, Mr. Lacey filed his first Form 211, "Application for Award for Original Information", to which he attached a one-page narrative. We refer to these collectively as his "first submission".[2] Mr. Lacey's first submission identified him as a "Former Employee" of BP (without dates of employment or other elaboration), stated that the tax year was 2010, and stated that the "Dollar Amount" was $12.89 billion. The attached narrative read in its entirety as follows:

> On April 20, 2010 there was an explosion at the Deepwater Horizon oil drilling platform operated by BP in the Gulf of Mexico. Within days of the explosion BP sent remotely operated vehicles with cameras to the ocean floor to observe crude oil blowing out into the Gulf. The cameras revealed that the blown well was releasing between 65,000 and 110,000 barrels of crude oil per day into the Gulf which would be subject to per-barrel fines of up to $4,300 per barrel. BP feared it could take up to 100 days to drill a relief well to stop the flow of crude oil. BP was facing a maximum fine of $47 billion.
>
> The BP CEO has admitted the motive in writing stating that BP faced a "corporate crisis that threatened the very existence of the company" when it made the decision to lie to Congress about the size of the spill

---

[2]Mr. Lacey refers to his first and second submissions as distinct claims, and he faults the WBO for not denominating them as separate claims. However, as we show below, the regulations allow a whistleblower whose claim has been "reject[ed]" to "perfect and resubmit the claim", 26 C.F.R. sec. 301.7623-1(c)(4), Proced. & Admin. Regs.; and the Commissioner has not contended here that the WBO was entitled to ignore Mr. Lacey's second submission nor that Mr. Lacey is precluded from relying on it. Thus, the issue is not whether the WBO characterized the second submission as a distinct claim but whether it failed properly to consider that submission.

and engage in a cover up.  Two years later, the company was adjudicated guilty of the felony of lying to Congress about the amount of crude oil that was being discharged from the blown well.

In its failed attempt to get away with that crime, BP engaged in a cover up which involved pumping toxic chemicals down to the wellhead to break up the oil into tiny droplets that would be absorbed by the environment and would effectively disappear.  In addition to making most of the crude oil disappear to avoid the per-barrel fines, the cover up involved allowing the 1,000 barrels per day BP claimed was leaking to float to shore where BP made a show of cleaning it up.

Had BP not engaged in the crime and cover up, it could have allowed all the crude oil to surface 40 miles out at sea where it could have recovered it from the ocean surface for a tiny fraction of the amount it spent on the cover up.  Therefore, at a minimum, the amount of money BP spent on the 1.9 million gallons of toxic chemicals it used in the failed cover up along with the cost of transporting and injecting those chemicals and the money it spent cleaning the 1,000 barrels per day from the beaches and compensating the businesses that lost money as a result should be denied.

It would be my pleasure to work with the IRS to calculate the precise amount of the deduction that should properly be disallowed.

That is, Mr. Lacey's first submission alleged that BP was responsible for an environmental disaster, that it misled the public about the size of the disaster, and that it incurred costs purportedly to clean up the environmental damage, but that it actually made its expenditures as part of a cover up to avoid massive "fines".

Mr. Lacey's first submission did not cite or suggest sources for his information.  It did not suggest that he had any inside information as a result of his

former employment at BP. It suggested that the result of his information should be that "the deduction * * * should * * * be disallowed"; but it did not state what "the deduction" was nor substantiate the fact of any specific deduction's having been reported. It gave no explanation for how the "Dollar Amount" of $12.89 billion was derived. The first submission did not cite any Code provision, regulation, or other legal authority.

The WBO's consideration of Mr. Lacey's first submission

Personnel in the WBO considered Mr. Lacey's claim.[3] In an internal email dated August 24, 2015, Kimberlee H. Loren, a whistleblower analyst, made the following recommendation:

> Reject 2015-011861. Basis for rejection: The claim has been rejected because the information provided was speculative and/or did not provide specific or credible information regarding tax underpayments or violations of internal revenue laws.

An undated award recommendation memorandum from Lisa Skeen to the director of the WBO summarized Mr. Lacey's allegations and recommended:

> Reject the Claim: Allegations are not specific, credible, or are speculative - No tax issue stated or identified

---

[3]The documents that demonstrate this consideration by the WBO are authenticated by the declaration of Cindy L. Wilde, the lead tax examining technician within the WBO's Initial Claim Evaluation Team, as "documents from respondent's administrative file".

The "Summary Recommendation" of that memorandum stated:

> Recommendation for rejection by classification.  Approval to issue the rejection letter authorized under the Director's Memorandum dated July 15, 2015.[4]  Whistleblower's allegations do describe amount owed by taxpayer to be greater than $2,000,000, but the claim lacks specific/credible information, is purely speculative in nature, or does not allege a tax issue and should be rejected under 301.7623-3(b)(3) (No Preliminary Rejection Letter).

The "Basis for the Recommendation" of that memorandum stated:

> The WB has not provided any specific information of what costs were incurred or deducted by the taxpayer.  The fact that the taxpayer may have chosen a method that the WB does not agree with and/or a more expensive method does not make the cost of that method non-deductible and the WB has not identified the tax issue that would deny a deduction for the costs associated with the method chosen by the taxpayer.

November 2015 rejection of the first submission

The WBO sent Mr. Lacey a letter dated November 4, 2015, that stated as follows:

FINAL DECISION UNDER SECTION 7623(a)

The Whistleblower Office has considered your Form 211, Application for Award for Original information, dated April 23, 2015.

---

[4]The Commissioner did not submit with his motion a copy of this "Director's Memorandum dated July 15, 2015".  We cannot tell whether the memorandum was specific to Mr. Lacey's claim or was applicable to claims generally.

Internal Revenue Code section 7623 provides that an award may be paid only if the information provided results in the collection of tax, penalties, interest, additions to tax, or additional amounts. The Whistleblower Office has made a final determination to reject your claim for an award.

The claim has been rejected because the information provided was speculative and/or did not provide specific or credible information regarding tax underpayments or violations of internal revenue laws. This letter does not contain a determination regarding an award under section 7623(b).

If you have any questions in regard to this letter, please feel free to contact the Whistleblower Office at * * * [telephone number].

Thus, by its express terms, the letter: (1) was a "final decision [i.e., a rejection] under section 7623(a)" (emphasis added), which provides for discretionary awards that are not reviewable by this Court, see Whistleblower 22716-13W v. Commissioner, 146 T.C. 84, 88 (2016); (2) "does not contain a determination[5] regarding an award under section 7623(b)" (emphasis added); and (3) reflects "a

---

[5]The regulations seem to use the word "determination" to refer to a decision granting an award, 26 C.F.R. sec. 301.7623-3(c)(6), Proced. & Admin. Regs., but a "rejection" is also a "determination", id. subpara. (7); and a "denial" is also a "determination", id. subpara. (8). Consequently, when the WBO's November 2015 letter stated that it "does not contain a determination regarding an award under section 7623(b)", it presumably means that it does not contain a determination granting an award. In any event, under the statute we have jurisdiction to review "[a]ny determination regarding an award", sec. 7623(b)(4), and for this purpose a "rejection" is one such "determination", see Cooper v. Commissioner, 135 T.C. 70, 75-76 (2010). We find the statement in the November 2015 letter to be confusing, and evidently Mr. Lacey did, too.

final determination to <u>reject</u> your claim for an award" (emphasis added),

presumably under section <u>7623(b)</u>.

<u>Correspondence about the first submission and rejection</u>

On December 11, 2015, Mr. Lacey's newly retained counsel wrote a letter to

the WBO to inform it of his representation of Mr. Lacey and to request

clarification of the November 4, 2015, letter. Mr. Lacey's counsel did not provide

any additional information in that letter; rather, he merely reminded the WBO that

Mr. Lacey's Form 211 alleged an amount in dispute exceeding $12 billion and

asked the WBO to confirm that Mr. Lacey's claim was still under review.

By letter dated January 22, 2016, the WBO informed Mr. Lacey that--

> We considered the additional information you provided and
> determined your claim still does not meet our criteria for an award.
> Our determination[6] remains the same despite the information
> contained in your latest letter.

That is, the January 2016 letter referred to "additional information", whereas

Mr. Lacey had not yet provided any.

<u>The second submission</u>

On March 10, 2016, Mr. Lacey's counsel sent the WBO a cover letter, a 21-

page "Brief in Support of Form 211", and a new Form 211 (which we refer to

---

[6]We infer that the "determination" referred to in the January 2016 letter was the WBO's rejection of Mr. Lacey's claim. <u>See</u> <u>supra</u> note 5.

collectively as the "second submission").  Mr. Lacey's brief gave additional information not included with his first submission, as follows.

Employment at BP.  Mr. Lacey's brief states that Mr. Lacey was employed at BP "in various capacities * * *, ultimately becoming the Senior Financial Analyst in the BP Credit Department."  The brief does not explain whether or how that work gave him information or insight into the 2010 incident that is the subject of his claim.  He worked at BP "from 1987 through 1996"; that is, his employment at BP ended 14 years before the 2010 incident.  However, "[d]uring those years he developed a network of contacts within the oil industry".  Eight years before the 2010 incident, using his "intimate knowledge of the BP corporate culture", Mr. Lacey "authored the book, Involuntary Separation, Corporate Downsizing Gone Fatally Wrong (* * * Copyright 2002), in an effort to expose the short-sighted cost cutting which BP has since admitted was the primary cause of the Deepwater Horizon Disaster and associated Oil Spill in the Gulf of Mexico."

Sources.[7]  Mr. Lacey's brief lists seven sources ("Available on Request")

that he evidently relied on to substantiate his allegations:

- • "BP Spill Response Plan";

- • "Factual Allocation, Exhibit 'A', Guilty Plea Agreement";

- • "BP Annual Report 2010";

- • "National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling, Staff Working Paper No. 4";

- • a letter from a congressman to the Coast Guard (with an internet citation);

---

[7]It appears that all of these are publicly available sources.  However, the now-current Internal Revenue Manual ("IRM") provisions for the operating divisions evaluating whistleblower claims (i.e., not for the WBO itself) identify as an "Unacceptable Reason[] for Rejection or Denial" of a claim the fact that "[t]he information provided by the whistleblower is publicly available information, the whistleblower has no firsthand knowledge of the issue."  IRM pt. 25.2.1.3.3(3) (Jan. 11, 2018).  The IRM explains:

> This is not a determination which can be made at the classification level.  Classification must still consider the information and compare it to the return to determine if a potential tax issue exists.  Congress authorized payment on information obtained from various public sources in IRC § 7623.  Claims submitted with publicly available information must still be considered, regardless of the whistleblower's firsthand knowledge of the situation.

Id.  In the 2015 IRM, we find neither an equivalent provision nor any contradictory provision.

- a Coast Guard and Environmental Protection Agency "Directive on Waste Management, June 29, 2010"; and

- a "CNN iReport" from June 11, 2010.

"Expert witnesses".  Mr. Lacey's brief identifies two persons--Bob Grantham, "Spokesman for Ship Owner TMT", and Paul Horsman, "Greenpeace Marine Biologist and Oil Spill Expert".  For each the brief gives a short quotation. The brief identifies them as "Expert Witnesses" but does not state whether they had actually been retained as such by Mr. Lacey.

Explanation of deduction.  Mr. Lacey's brief begins with a "Preliminary Statement of Whistleblower" that includes this summary explanation of his contentions about BP's alleged illegal deduction:

> The $12.9 billion deducted as "ordinary and necessary" clean-up expense was in reality spent on an elaborate scheme to make most of the oil seemingly disappear--by hiding it in the water column.  This was achieved by the unprecedented pumping of dispersant chemicals into the flow of oil at the wellhead on the ocean floor to prevent it from surfacing.  At the same time, BP deployed huge numbers of clean-up workers and vessels to project the illusion of a massive clean-up effort.  This "shock and awe" tour de force was designed to divert attention, allowing the company to more easily mislead the public and the government about the size of the Spill.  This in turn allowed BP to evade the bulk of the per-barrel fines which the company projected could reach $43 billion.  When a former BP Vice President executed a letter to Congress claiming the well was leaking 5,000 barrels per day, though he knew the true figure was closer to 100,000 barrels per day, he was secure in the knowledge that the company would not contradict his assertion and that a plan was being

carried out to make the excess 95,000 barrels per day disappear. Until the Plea Agreement was signed in November 2012, no BP employee ever betrayed the lie. Lying to Congress is a criminal act and a public-policy exception which disqualifies all expenses incurred to both commit and cover up the crime. Likewise, expenditures having their origin in an environmental law violation and incurred to prevent the imposition of a fine that was designed to be punitive, meet the definition of a fine or penalty under Section 162(f) and are not deductible.

Legal citations. On a "Citations Page", Mr. Lacey's brief cites three cases, one Code section, and an IRS technical advice memorandum in support of his contention that BP should not be permitted to deduct its expenditures to purportedly clean up the damage and to evade fines under the environmental statute.

The brief cites section 162 as follows:

26 U.S. Code § 162 - Trade or business expenses: Because Section 162 (f) states that no deduction shall be allowed under subsection (a) for any fine or similar penalty paid to a government for the violation of any law, [it] follows that no deduction should be allowed for funds spent to evade those fines or cover up those crimes.

The brief cites an IRS technical advice memorandum as follows:

IRS Technical Advice Memorandum 200629030 (07/21/06): The government used the origin of the claim doctrine to conclude that expenditures having their origin in an environmental law violation and incurred to prevent the imposition of a fine that was designed to be punitive met the definition of a fine or penalty under Section 162(f).

The brief cites three court opinions--<u>Tank Truck Rentals, Inc. v. Commissioner</u>, 356 U.S. 30 (1958),[8] which is cited in Tech. Adv. Mem. 200629030 (July 21, 2006), above; <u>Commissioner v. Tellier</u>, 383 U.S. 687 (1966), which Mr. Lacey distinguishes;[9] and <u>Jerry Rossman Corp. v. Commissioner</u>, 175 F.2d 711, 713 (2d Cir. 1949), <u>rev'g and remanding</u> 10 T.C. 468 (1948).[10]

---

[8]Business expenses are deductible only if "ordinary and necessary", sec. 162(a); and in <u>Tank Truck Rentals, Inc. v. Commissioner</u>, 356 U.S. 30 (1958), the Supreme Court held that an expense is not "necessary" if "allowance of the deduction would frustrate sharply defined national or state policies proscribing particular types of conduct", <u>id.</u> at 33, that "the frustration of state policy is most complete and direct when the expenditure for which deduction is sought is itself prohibited by statute", <u>id.</u> at 35, and that disallowance is also called for where "the expenditure is not itself an illegal act, but rather the payment of a penalty imposed by the State because of such an act", <u>id.</u> Mr. Lacey's brief comments as follows on <u>Tank Truck Rentals, Inc.</u>: "The standard here is easily met since the expense itself was an illegal act and it rendered impossible the income generating activity in which BP is engaged, namely, the extraction of hydrocarbons."

[9]<u>Commissioner v. Tellier</u>, 383 U.S. 687 (1966), held that the deduction of legal expenses claimed by a securities dealer in his unsuccessful defense of criminal prosecution was not to be disallowed as violating public policy. Mr. Lacey's brief distinguishes <u>Commissioner v. Tellier</u> as follows: "Unlike Tellier, who committed securities fraud in the pursuit of his business of underwriting securities, BP was not in the business of lying to Congress or of evading Clean Water Act fines. As such, funds expended to cover up those crimes are public policy exceptions which must be denied."

[10]Mr. Lacey's brief comments as follows on <u>Jerry Rossman Corp. v. Commissioner</u>, 175 F.2d 711, 713 (2d Cir. 1949), <u>rev'g and remanding</u> 10 T.C. 468 (1948): "The 'severity and immediacy of the frustration resulting from the allowance of the deduction' here is extreme. BP is deducting an activity that

(continued...)

Conclusion.  Mr. Lacey's brief concluded:

It follows that the IRS should disallow the $12.9 billion portion of
BP's "Spill Response Deduction" classified as "Clean-up Expense,"
apply the appropriate tax rate, recover the deficiency (approximately
$3.7 billion) and make the award required by the Act to the
Whistleblower.

The WBO's consideration of Mr. Lacey's second submission

We cannot tell the nature and extent of any consideration that WBO

personnel gave to Mr. Lacey's second submission.  The Commissioner did not

---

[10](...continued)
deprives the government of $4,300 for each barrel of oil the activity conceals."
Jerry Rossman Corp. involved a taxpayer whose "prices were fixed upon a 'cost
plus' basis by regulations pomulgated [sic] under the Emergency Price Control
Act of 1942", id. at 711, but who inadvertently charged excessive prices to its 200
customers (who in turn unwittingly passed along the excess to the ultimate
consumers).  The taxpayer discovered the error, reported it to the Office of Price
Administration, reached an agreement with the Office that it would pay the gross
overcharge to the United States, and then on its return claimed for that payment a
deduction that the IRS disputed.  Id. at 711-712.  The Court of Appeals for the
Second Circuit concluded that the payment was not a "penalty", id., but addressed
the question whether it might be deductible even if it was a penalty.  Under the
then-applicable authorities, the Court of Appeals observed that "some [penalties]
are deductible and some are not" and that a deduction for payment of a penalty
should be disallowed where "the allowance of the deduction would frustrate the
sharply defined policies".  Id. at 713 (quoting Commissioner v. Heininger, 320
U.S. 467, 474 (1943)).  The court held the payment deductible even if it was a
"penalty".  Mr. Lacey's brief does not explain how this analysis would apply to
amounts not paid to the Government and deducted after the enactment of
section 162(f) (enacted in 1969, 20 years after Jerry Rossman Corp.).

submit with his motion any internal emails or memoranda by WBO personnel that were generated after the second submission.

April 2016 rejection after the second submission

By letter dated April 6, 2016, the WBO responded as follows to the second submission:

> We considered the additional information you provided and determined your claim still does not meet our criteria for an award. Our determination remains the same despite the information contained in your latest letter.
>
> Please keep in mind the confidentiality of the informants' claims process and understand that we cannot disclose the facts surrounding an examination, i.e. taxes collected and audit examination.
>
> Although the information you submitted did not qualify for an award, thank you for your interest in the administration of the internal revenue laws.
>
> If you have any further questions in regards to this letter please feel free to contact the Initial Evaluation Claims at * * * [telephone number].

The letter repeated verbatim the January 2016 letter, quoted in part above, that the WBO had sent to Mr. Lacey after his counsel's inquiry. In the April 2016 letter, the WBO did not assign a new claim number to Mr. Lacey's second submission but, rather, used the number assigned to the first submission. See supra note 2.

The IRS did not initiate any administrative or judicial proceedings against BP nor collect any "proceeds" from BP on the basis of Mr. Lacey's information.

Mr. Lacey's petition

On April 26, 2016, Mr. Lacey petitioned this Court for review of the WBO's determination. The petition challenged the WBO's determination that the information Mr. Lacey had provided in the first submission was "speculative and/or did not provide specific or credible information". With regard to the January 22, 2016, letter, the petition stated: "I disagree that IRS considered additional information because none was provided."

The petition also challenged the conclusion in the Commissioner's April 2016 rejection that the information provided in the second submission still did not meet the criteria for an award. The petition asserts that the WBO did not review Mr. Lacey's second submission and that no WBO analyst made a recommendation to reject Mr. Lacey's claim as supplemented by his second submission.

The Commissioner's motion

The Commissioner filed a motion for summary judgment in which he contends that the WBO did not abuse its discretion in rejecting Mr. Lacey's claim for an award under section 7623. We construe the motion as making two

alternative contentions, although the Commissioner does not explicitly articulate them as such.[11]

First, the Commissioner points to the undisputed facts that the IRS did not proceed with any administrative or judicial action nor collect any proceeds on the basis of Mr. Lacey's information. Since no award could be possible under those facts, the Commissioner contends that he is entitled to summary judgment in this case.

Second, the Commissioner's motion explains that Mr. Lacey's claim was properly rejected "because the claim lacked specific or credible information, was purely speculative in nature, and did not allege a tax issue." The Commissioner further explained the basis for immediate rejection of Mr. Lacey's claim:

> [Petitioner] has not provided any specific information of what costs were incurred and deducted by the taxpayer. The fact that the taxpayer may have chosen a method that the [petitioner] does not

---

[11]The Commissioner's reply memorandum characterizes his argument thus: "[T]he undisputed material facts demonstrate that the Whistleblower Office did not abuse its discretion in rejecting petitioner's claim for award. Specifically, the administrative claim file evinced that respondent did not proceed based on petitioner's information, no administrative or judicial action was taken, and there were no collected proceeds." (Emphasis added.) Arguably, this reflects reliance on a single contention--i.e., that the absence of collected proceeds and of administrative or judicial action requires the conclusion that there was no abuse of discretion by the WBO. However, the Commissioner's motion does argue that the WBO rightly concluded that Mr. Lacey's claim "lacked specific or credible information", so we address here that contention as well.

agree with and/or a more expensive method does not make the cost of that method non-deductible and the [petitioner] has not identified the tax issue that would deny a deduction for the costs associated with the method chosen by the taxpayer.

For that reason, the Commissioner argues he is entitled to summary judgment.

Mr. Lacey's response to the motion argues that the WBO abused its discretion in rejecting his claim after his second submission. He asserts that the Commissioner rejected the second submission without issuing an award recommendation memorandum or a separate claim number and that the WBO was required by section 7623(b) to analyze the second submission because the amount of the deduction in dispute, $12.9 billion, had a tax effect that exceeded $2 million. Mr. Lacey contends that the WBO was required to use his information to pursue BP, which had violated internal revenue laws. He argues that the second submission alleged a credible Federal tax issue--i.e., that it was improper for BP to deduct the purported cleanup expenses because section 162(f), which provides that no deduction shall be allowed under subsection (a) for any fine or similar penalty paid to a Government for the violation of any law, should extend to disallow expenditures incurred to evade such nondeductible fines or penalties. Mr. Lacey also argued that he had provided the WBO with sufficient information from which to proceed with an administrative or judicial action.

Mr. Lacey argues that the WBO failed to properly process the second submission and requests that the Court deny the Commissioner's motion and remand the case to the WBO with instructions to process his second submission.

## Discussion

I.    Summary judgment standard

The purpose of summary judgment is to expedite litigation and avoid unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we draw factual inferences in the light most favorable to the nonmoving party. Sundstrand Corp. v. Commissioner, 98 T.C. at 520.

As we explain in part II.C below, we held in Kasper v. Commissioner, 150 T.C. 8 (2018), that we review the WBO's decisions not de novo but rather for abuse of discretion. For the reasons explained below in part III.B.2, we conclude

that material facts about the WBO's exercise of its discretion are in dispute,

requiring denial of the Commissioner's motion.[12]

## II.     General principles concerning whistleblower awards

### A.     Awards under section 7623

#### 1.     Criteria for award entitlement

Section 7623 provides for awards to those individuals (i.e., whistleblowers)

who provide information to the Government about third parties who are

underpaying their taxes. Specifically, section 7623(a) provides that the Secretary

is authorized to make payments for the detection of underpayments of tax or for

detecting and bringing to trial and punishment persons who are guilty of violating

the internal revenue laws. As amended in 2018,[13] section 7623(b)(1) provides:

---

[12]The U.S. Court of Appeals for the D.C. Circuit, to which an appeal in this case would presumably lie, see sec. 7482(b)(1), has observed that "the question whether * * * [an agency] acted in an arbitrary and capricious manner is a legal one which the district court [or, as here, the Tax Court] can resolve on the agency record--regardless of whether it is presented in the context of a motion for judgment on the pleadings or in a motion for summary judgment", Univ. Med. Ctr. of S. Nev. v. Shalala, 173 F.3d 438, 440 n.3 (D.C. Cir. 1999). However, here we lack the complete administrative record, so we decide only, on the parties' submissions supporting and opposing the Commissioner's motion, whether there is a genuine dispute of material fact as to the WBO's consideration and rejection of Mr. Lacey's claim.

[13]The Bipartisan Budget Act of 2018, Pub. L. No. 115-123, sec. 41108, 132 Stat. at 158-159, amended some of the terminology in section 7623, and the

(continued...)

If the Secretary proceeds with any administrative or judicial action * * * based on information brought to the Secretary's attention by an individual, such individual shall * * * receive as an award at least 15 percent but not more than 30 percent of the proceeds collected as a result of the action (including any related actions) or from any settlement in response to such action * * * .

Under the plain words of section 7623(b)(1), a whistleblower award depends upon (1) the initiation of an "administrative or judicial action" based on the whistleblower's information and (2) the "proceeds collected as a result of the action"; both are necessary prerequisites for an award. See Cooper v. Commissioner ("Cooper II"), 136 T.C. 597, 601 (2011).

In this case it is undisputed that the IRS did not use Mr. Lacey's information to initiate administrative or judicial action (indeed, Mr. Lacey's main point is that the IRS failed to do so); and it therefore follows that no proceeds could have been collected as a result of his information and that therefore no award could be payable to him--at least not yet. The IRS contends that this proposition ends the matter in this case. However, the dispute involves the question whether we have

_____

[13](...continued)
effective date of the amendments is uncertain. See Whistleblower 23711-15W v. Commissioner, T.C. Memo. 2018-34, at *15 n.6. None of the amendments has any effect on the issues we decide here, and in this opinion we quote the statute as amended.

jurisdiction to review the WBO's actions or inactions that forestalled further proceedings.

### 2. Initial evaluation by the WBO

It is the WBO that initially evaluates whistleblower claims and information, see sec. 7623(b)(2) and (3), and in doing so it acts pursuant to regulations, see 26 C.F.R. secs. 301.7623-1 to -4, Proced. & Admin. Regs. The pertinent regulations provide that, in order to be eligible for an award--

> a whistleblower must submit to the IRS specific and credible information that the whistleblower believes will lead to collected proceeds from one or more persons whom the whistleblower believes have failed to comply with the internal revenue laws. In general, a whistleblower's submission should identify the person(s) believed to have failed to comply with the internal revenue laws and should provide substantive information, including all available documentation, that supports the whistleblower's allegations. * * * Submissions that provide speculative information or that do not provide specific and credible information regarding tax underpayments or violations of internal revenue laws do not provide a basis for an award. * * * [26 C.F.R. sec. 301.7623-1(c)(1).]

That is, in the first instance, the WBO decides, on the basis of the face of the whistleblower's submission itself, whether that submission meets a minimum standard:

> If a whistleblower files a claim for award that * * * does not contain specific and credible information as described in paragraph (c)(1) of this section, * * * the Whistleblower Office may reject the claim or notify the whistleblower of the deficiencies and provide the

whistleblower an opportunity to perfect the claim for award. * * * If the Whistleblower Office rejects a claim, then the Whistleblower Office will provide notice of the rejection to the whistleblower pursuant to the rules of § 301.7623-3(b)(3) or (c)(7). If the Whistleblower Office rejects a claim for the reasons described in this paragraph, then the whistleblower may perfect and resubmit the claim. [Id. para. (c)(4).]

In sum, the text of the foregoing regulation, 26 C.F.R. sec. 301.7623-1(c)(1) and (4), includes the following criteria for a claim that may be eligible for an award:

- "contain[s] specific * * * information";

- "contain[s] * * * credible information";

- provides "information that the whistleblower believes will lead to collected [tax] proceeds";

- reports "fail[ure] to comply with the internal revenue laws";

- "identif[ies] the person(s) believed to have failed to comply with the internal revenue laws";

- "provide[s] substantive information, including all available documentation"; and

- does not "provide speculative information".

We are not aware of any regulation or other authority defining "speculative" expressly for purposes of the WBO's initial analysis; but the current Internal

Revenue Manual ("IRM") provisions applicable to the operating divisions to

which (as we explain below) the WBO may refer a claim, state:

> Claims are considered purely speculative in nature if the claim lacks
> any basis or support for the allegations. If the allegations are based
> on or supported by information, including public information, then
> the claim is not purely speculative in nature. If the submission does
> not contain a specific or credible tax issue, or is purely speculative in
> nature, then no further review is required. [IRM pt. 25.2.1.3.2(5)
> (Jan. 11, 2018).[14]]

It is the job of the WBO to initially evaluate a claim against those criteria.

### 3. Rejection of deficient claim[15]

If, in its initial evaluation, the WBO determines that a claim is deficient,

then under the regulations it can "reject" the claim outright, in which case "the

---

[14]The IRM does not carry the force of law and is not binding on the IRS, but we can use it to show the Commissioner's interpretation and application of the Code and regulations to guide our own evaluation. Rhone-Poulenc Surfactants & Specialties, L.P. v.Commissioner, 114 T.C. 533, 543 n.16 (2000).

[15]The WBO has other options that it did not employ here: It can "notify the whistleblower of the deficiencies and provide the whistleblower an opportunity to perfect the claim for award", within a "time period specified" by the WBO, 26 C.F.R. sec. 301.7623-1(c)(4), or it can issue a "preliminary rejection letter", after which "the whistleblower has 30 days * * * to submit comments to the Whistleblower Office (this period may be extended at the sole discretion of the Whistleblower Office)", 26 C.F.R. sec. 301.7623-3(c)(7). Thus, the Internal Revenue Manual states that if a claim does not "contain all the required information * * *, the Whistleblower Office may reject the claim or the Whistleblower Office may correspond with the whistleblower for the missing information." IRM pt. 25.2.2.4(1)(b) (Aug. 7, 2015). The 2018 IRM is to the same effect. See IRM pt. 25.2.1.2(2)(b) (Jan. 11, 2018).

whistleblower may perfect and resubmit the claim" (without any stated deadline).

26 C.F.R. sec. 301.7623-1(c)(4).[16]  If the WBO does not "reject" the claim in the

threshold but later determines not to grant any award, that determination is

referred to as a "denial" under 26 C.F.R. section 301.7623-3(c)(8) (rather than as a

"rejection" under paragraph (c)(7), which, as quoted above, refers to action based

on "the face of the claim").  Consequently, after the WBO rejected Mr. Lacey's

claim (as first submitted) in its November 2015 rejection letter, Mr. Lacey was

entitled to perfect his claim and make his second submission, and the WBO was

obligated to consider it and purported to do so.

4.      Further consideration of claims not "rejected"

If the WBO determines that the whistleblower's claim does "contain

specific and credible information" and otherwise meets the minimum criteria, then

the WBO will refer the claim to an operating division of the IRS.[17]  It is the

_____

[16]Likewise, the Internal Revenue Manual states:  "If the Whistleblower
Office rejects a claim * * * [because it does not "contain all the required
information"], then the whistleblower may perfect and resubmit the claim".  IRM
pt. 25.2.2.4(1)(b) (Aug. 7, 2015).  The 2018 IRM is to the same effect.  See IRM
pt. 25.2.1.2(2)(b).  The Commissioner has not contended here that the time,
manner, or procedural posture of Mr. Lacey's second submission entitled the
WBO to ignore it or now precludes Mr. Lacey from relying on it.

[17]See Whistleblower 21276-13W v. Commissioner, 144 T.C. 290, 299
(2015); McCrory v. Commissioner, T.C. Memo. 2018-12, at *3; IRM pt.

(continued...)

operating division (not the WBO) that makes the decision whether and how the

IRS will use the information to examine the target taxpayer.[18]  If the operating

division proceeds with an audit that results in collection of proceeds attributable to

_____

[17](...continued)
25.2.2.4(3) (Aug. 7, 2015) ("The claim file will be forwarded to the appropriate
Operating Division for classification"); IRM pt. 25.2.1.2(4) (Jan. 11, 2018) (to the
same effect); see also IRS Publication 5251, "The Whistleblower Claim Process",
at 2 ("If the Whistleblower Office determines the claim has merit, the allegations
are forwarded to the appropriate IRS operating division(s) for further
development").

[18]The process to be followed by the operating division is set out in detail in
the Internal Revenue Manual, and the differences between the 2015 IRM and the
2018 IRM are insignificant for purposes of this discussion.  The initial work of the
operating division is done by "Classifiers" who "[d]etermine whether the
allegations meet threshold tolerances.  Classifiers should follow the guidance for
"Materiality/Significance of the Issue" found in IRM 4.1.5.3, Planning and Special
Programs - Classification and Case Building."  IRM pt. 25.2.1.3.2(3) (Jan. 11,
2018).  The Classifiers also "[d]etermine whether the information meets the
operating division's criteria for selecting for field exam or referring to the subject
matter expert (SME)" and "[d]etermine whether the information should be
forwarded for further investigation."  IRM pt. 25.2.1.3.2(8) and (9) (Jan. 11,
2018); cf. IRM pt. 25.2.2.4(3) (Aug. 7, 2015).  They may refer the claim to an
SME, who "will evaluate the Form 211 and accompanying information to
determine whether it may materially contribute to the identification, development
or resolution of taxpayer liability or collection issues."  IRM pt. 25.2.2.4.4(1)
(Aug. 7, 2015); see also IRM pt. 25.2.1.4.1(1) (Jan. 11, 2018) (to the same effect).
If this initial process by the operating division results in a decision to examine the
target taxpayer, then the case is worked by examination personnel.  "The examiner
cannot be the same person as the SME or the individual who classified the Form
211."  IRM pt. 25.2.1.5(1) (Jan. 11, 2018); see also IRM pt. 25.2.2.4.4(1) (Aug. 7,
2015) (to the same effect).

the whistleblower's information, then an award may result pursuant to 26 C.F.R. section 301.7623-4.

## B. Tax Court jurisdiction

Section 7623(b)(4) provides for Tax Court jurisdiction with respect to determinations of the WBO regarding whistleblower award claims:

> (4) Appeal of award determination.--Any <u>determination regarding</u> an award under paragraph (1), (2), or (3) may, within 30 days of such determination, be appealed to the Tax Court (and the Tax Court shall have jurisdiction with respect to <u>such matter</u>). [Emphasis added.]

Thus, the statute confers "jurisdiction with respect to such matter"--i.e., with respect to "[a]ny determination regarding an award". <u>See</u> <u>Cooper v. Commissioner</u>, 135 T.C. 70 (2010).[19]

However, section 7623(b) does not convert the Tax Court into an overseer of the IRS's audit and collection activity. Rather, the statute confers upon the Tax Court jurisdiction with respect to "[a]ny determination regarding an award <u>under paragraph (1), (2), or (3)</u>". Sec. 7623(b)(4) (emphasis added). Section 7623 refers

_____

[19]Thus, the WBO's April 2016 rejection letter to Mr. Lacey is, in the wording of our jurisdictional grant (section 7623(b)(4)), a "determination regarding an award under paragraph (1)" of section 7623(b). That paragraph describes the conditions under which an "individual shall * * * <u>receive</u> * * * an award" (emphasis added); but a denial or rejection is a (negative) "determination regarding an award", so the Tax Court has jurisdiction where, pursuant to the WBO's determination, the individual does <u>not</u> receive an award.

to various acts by "the Secretary"[20] (a broad term meaning "the Secretary of the

Treasury or his delegate", sec. 7701(a)(11)(B)); but the statute's description of our

jurisdiction refers to paragraphs (1), (2), and (3) of section 7623(b), and in those

paragraphs the only "determination[s]" referred to are those by "the Whistleblower

Office",[21] i.e., not acts by the Secretary's delegates within the IRS who conduct

examination and collection activity.  As we explained in Cohen v. Commissioner,

139 T.C. 299, 302 (2012) (citing Cooper II, 36 T.C. at 600), aff'd per curiam, 550

F. App'x 10 (D.C. Cir. 2014):

> Our jurisdiction under section 7623(b) does not contemplate that we
> review the Commissioner's determinations of the alleged tax liability
> to which the claim pertains. * * * Nor does section 7623 confer
> authority to direct the Commissioner to commence an administrative
> or judicial action.

---

[20]See sec. 7623(a) ("The Secretary * * * is authorized to pay" discretionary awards not reviewed by the Tax Court); sec. 7623(b)(1) ("If the Secretary proceeds with any administrative or judicial action"; "information brought to the Secretary's attention"; "whether such proceeds are available to the Secretary" (emphasis added)); sec. 7623(b)(2)(A) ("whether such proceeds are available to the Secretary" (emphasis added)); sec. 7623(b)(6)(C) ("information submitted to the Secretary" (emphasis added)).

[21]See sec. 7623(b)(1) ("The determination of the amount of such award by the Whistleblower Office" (emphasis added)); sec. 7623(b)(2)(A) ("which the Whistleblower Office determines to be based principally on disclosures"; "the Whistleblower Office may award such sums * * * (determined without regard * * *)" (emphasis added)); sec. 7623(b)(3) ("If the Whistleblower Office determines that the claim" (emphasis added)).

The Court of Appeals for the D.C. Circuit affirmed in <u>Cohen</u> and elsewhere[22] our holdings that we do not review the IRS's decision whether to audit a target in response to a whistleblower's claim and that we have no authority to require the IRS to explain a decision not to audit.

C.      Standard and Scope of Review

We review the WBO's actions by applying an abuse-of-discretion standard. <u>Kasper v. Commissioner</u>, 150 T.C. at 21-23.  That is, we do not substitute our judgment for the reasonable judgment of the WBO; rather, we overrule only a decision that constituted an abuse of discretion.  Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. <u>Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), <u>aff'd</u>, 469 F.3d 27 (1st Cir. 2006).

In ascertaining whether the Secretary abused his discretion, we generally confine our review to the administrative record.  <u>Kasper v. Commissioner</u>, 150 T.C. at 20.  "The administrative record comprises all information contained in the

_____

[22]<u>See</u> <u>Meidinger v. Commissioner</u>, 559 F. App'x 5 (D.C. Cir. 2014); <u>Simmons v. Commissioner</u>, 523 F. App'x 728, 729 (D.C. Cir. 2013) ("the Tax Court lacks the authority to order the Secretary to conduct audits"); <u>Krug v. Commissioner</u>, 120 A.F.T.R.2d 2017-6480 (D.C. Cir. 2017) ("The Commissioner has discretion whether to initiate an action against a taxpayer; the courts cannot compel the Commissioner to initiate such action or to accept appellant's [whistleblower] claim").

administrative claim file that is relevant to the award determination and not protected by * * * privileges." 26 C.F.R. sec. 301.7623-3(e)(1). The Supreme Court has held that "a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." SEC v. Chenery Corp. (Chenery II), 332 U.S. 194, 196 (1947). Consequently, we held in Kasper v. Commissioner, 150 T.C. at 23-24:

> Under the Chenery doctrine we can uphold the WBO's determination only on the grounds it actually relied on when making its determination. * * * This means that the WBO must clearly set forth the grounds on which it made its determination, so that we don't have to guess. See * * * [Chenery II, 332 U.S. at 196]. We cannot uphold the WBO's determination "simply because findings might have been made and considerations might be disclosed which might justify his ultimate conclusion." Antioco [v. Commissioner, T.C. Memo. 2013-35], at *25 (citing * * * [SEC v. Chenery Corp., 318 U.S. 80, 93-94 (1943)]).

Thus, the Tax Court reviews a WBO determination by reference to the grounds that it states, not by reference to post hoc rationalizations.

We have recently held that remand can be appropriate in a whistleblower case under section 7623(b). See Whistleblower 769-16W v. Commissioner, 152 T.C. ___ (Apr. 11, 2019).

III.    Analysis

We construe the Commissioner's motion for summary judgment to assert that he is entitled to prevail on two contentions:  (1) that a determination "rejecting" a claim must always be sustained because there has been no administrative or judicial action and no collection of tax proceeds and (2) that Mr. Lacey's claim was properly "rejected" because it did not meet the threshold requirements for an award under section 7623(b).  A third issue is the appropriateness of the remand that Mr. Lacey has requested.  We now analyze those three issues.

A.    Whether the Tax Court has jurisdiction to review "rejection" of a claim notwithstanding the absence of "action" and "proceeds"

In some whistleblower cases, the outcome-determinative issue is whether, making use of the whistleblower's information, the IRS "proceeds with any administrative or judicial action" against a target taxpayer and collects "proceeds" as a result.  Sec. 7623(b)(1).  No award can be granted in the absence of either such an "action" or such "proceeds" (or both), and some cases therefore are resolved on that basis.  See, e.g., Whistleblower 14106-10W v. Commissioner, 137 T.C. 183, 189 (2011); Cooper II, 136 T.C. at 600; McCrory v. Commissioner, T.C. Memo. 2018-12; Perales v. Commissioner, T.C. Memo. 2017-90.

Congress has not conferred on the Tax Court authority to direct the IRS to commence or continue an audit, see supra part II.B (citing Cohen v. Commissioner, 139 T.C. at 302, nor authority to direct collection. Consequently, a case in which the whistleblower asks us to order an audit or to order collection will fail. The Commissioner seems to attempt to present this case as if it were such a case. But it is not.

Mr. Lacey does not challenge a decision by IRS examination personnel declining to audit BP's returns on the basis of his information (since no such decision was ever made), nor does he challenge a decision by IRS collection personnel declining to attempt to collect from BP tax liability arising from his information (since no such decision was ever made). He does not ask us to review any act by those examination and collection personnel or to give any direction to those examination and collection personnel. Rather, Mr. Lacey challenges action by the WBO--i.e., its declining to refer his claim for substantive consideration but instead "rejecting" it on the grounds that it failed to meet minimum standards for consideration. We address below, in part III.B, the validity of the WBO's "rejection" determination; but the point relevant here is this: Having been given jurisdiction over "[a]ny determination regarding an award", sec. 7623(b)(4), and having been charged with the review of the WBO's exercise of its discretion, we

do have authority to review its abuse of discretion in a decision to reject a claim for failure to meet threshold requirements without referring it to an IRS operating division.

The Commissioner's reading of our Opinions in Cohen and Cooper II would evidently enable the WBO to immunize itself from such review, but that reading is untenable, as the Court would have jurisdiction to do nothing but grant summary judgment in favor of the IRS when reviewing rejections by the WBO--which is no kind of review at all. See Urda op. p. 51. The WBO's procedures and the standard and scope of our review have been clarified since these cases were decided,[23] but we affirm the validity of their holding that we cannot order "administrative or judicial action" by the IRS--a holding founded on the observation in Cooper II, 136 T.C. at 600-601, that "Congress has charged the Secretary [i.e., "the Secretary of the Treasury or his delegate", sec. 7701(a)(11)(B)] with the responsibility of seeking tax revenue in every

---

[23]Our Opinions in Cooper v. Commissioner ("Cooper II"), 136 T.C. 597 (2011), and Cohen v. Commissioner, 139 T.C. 299 (2012), aff'd per curiam, 550 F. App'x 10 (D.C. Cir. 2014), were issued before the 2012 proposal, see 26 C.F.R. secs. 301.7623-1 to -4; 77 Fed. Reg. 74798 (Dec. 18, 2012), and the 2014 adoption, see T.D. 9687, 2014-36 I.R.B. 468 (Sept. 2, 2014), of the regulations in 26 C.F.R. secs. 301.7623-1 to -4; and they were decided years before our decision in Kasper v. Commissioner, 150 T.C. 8 (2018) (holding that we review the WBO's decisions for abuse of discretion on the basis of the administrative record), see Urda op. p. 50.

possible situation. Secs. 7601 and 7602." The IRS and not the Tax Court decides whether and how to audit a taxpayer's return, and section 7623(b)(4) confers on the Tax Court jurisdiction not to supervise audits but to review the acts of the WBO. Clearly it is not the WBO but rather an IRS "Operating Division" that makes the "determination not to proceed with an action". 26 C.F.R. sec. 301.7623-4(d)(2)(ii); see supra note 18. The Tax Court does not review such audit decisions.

Under section 7623(b)(4), however, the Tax Court does review for abuse of discretion "[a]ny determination regarding an award under paragraph (1), (2), or (3)" by the WBO, whether a threshold decision to "reject" a claim without substantive consideration or an ultimate determination to make an award. Though it is clear we do not review decisions whether to audit or collect, neither we nor the Court of Appeals for the D.C. Circuit has heretofore addressed the question whether we can review the WBO's threshold determination to "reject" a claim on its face. In Cohen, which arose before the proposal and adoption of the regulations, see supra note 23, the WBO had sent a letter "inform[ing] petitioner he was not eligible for an award because no proceeds were collected", and in characterizing the dispute, we stated that "[p]etitioner disagrees with respondent's decision not to act on his information". Cohen v. Commissioner, 139 T.C. at 301,

302.  That "decision not to act on * * * [the whistleblower's] information" is what we do not review, as we held in Cohen; and the regulations proposed and issued after Cohen make it clear that such a decision to act on the information (i.e., a decision whether to conduct an audit) is now made by an operating division of the IRS.  See, e.g., 26 C.F.R. sec. 301.7623-4(d)(2)(ii).

What we address in this case is instead the preceding decision, which the post-Cohen regulations assign to the WBO and which was not explicitly addressed in Cohen--i.e., the decision whether to summarily "reject" a claim because, on its face, the claim fails to meet minimum threshold criteria.  See supra part II.A.2 and 3.  If the Tax Court were not able to review a WBO determination to "reject" a claim, then even a wholesale failure of the WBO to perform its congressionally mandated function would be utterly unreviewable.  Hypothetically, if the WBO were to reject reflexively by return mail all whistleblower claims--a clear abuse of its discretion--it could thereafter defend every case with the irrefutable contentions that no administrative or judicial action had been commenced or continued and that no proceeds had been collected on the basis of the whistleblower's information.  Of necessity, those contentions would always be factually true, but such reflexive rejection by the WBO would be arbitrary--and, if arbitrary, then an abuse of discretion that we must reverse.  See Kasper v. Commissioner, 150 T.C.

at 21-23. One of the WBO's options is indeed to "reject" a claim without substantive consideration of its information and allegations beyond the face of the claim; and we review such a rejection by looking for an abuse of discretion and not by substituting our own judgment for that of the WBO; but the WBO's exercise of its discretion in rejecting a claim must conform with the pertinent regulatory criteria.

It seems that the Commissioner would have us decide this case without reviewing the WBO's determination but, rather, by simply consulting the fact that "administrative action" and "proceeds" are lacking here (as they will always be lacking at the threshold, where this case stalled). The WBO's determination (the April 2016 rejection letter) said nothing about the presence or absence of "administrative action" or "proceeds" but only of failure to "meet our criteria for an award" (because "the information provided was speculative and/or did not provide specific or credible information regarding tax underpayments or violations of internal revenue laws"). Under Chenery II, 332 U.S. at 196, those grounds only (and not "administrative action" or "proceeds") are "the grounds invoked by the agency", and those are the grounds that we must consider as we review the WBO's determination. See Kasper v. Commissioner, 150 T.C. at 23-24.

The Tax Court's review of a WBO determination to "reject" a claim is not preempted by the absence of "action" and "proceeds", which will always be absent in the instance of the WBO's "rejection" of a claim in the threshold.

B.   Whether the WBO's rejection of Mr. Lacey's claim reflects an abuse of discretion

Mr. Lacey contends that the WBO abused its discretion in rejecting his claim, but the Commissioner's motion apparently undertakes to show the contrary under the Rule 121 standard that there is no genuine dispute of material fact. Although the WBO's November 2015 rejection of his first submission is arguably moot in light of the April 2016 rejection of his second submission, and although neither party focuses on the propriety of the November 2015 rejection standing alone, that November 15 rejection is effectively incorporated by reference into the April 2016 rejection, so we address it first.

1.   The first submission and the November 2015 rejection

As we observed above, Mr. Lacey's May 2015 one-page submission in support of a $12.89 billion "disallowance" did not cite or suggest sources, did not suggest that he had any inside information, and did not identify "the deduction" he described nor substantiate BP's reporting any deduction. Its "Dollar Amount" of $12.89 billion was unexplained. It did not cite any legal authority.

At least two members of the WBO staff considered Mr. Lacey's first submission and wrote recommendations that his claim be rejected. Their recommendations were followed, and the WBO's November 2015 letter economically stated: "The claim has been rejected because the information provided was speculative and/or did not provide specific or credible information regarding tax underpayments or violations of internal revenue laws."

Mr. Lacey does not contend that his first submission was adequate but rather explains that he expected to supplement his information after the IRS began considering his claim. In effect, he acknowledges that his first submission was, taken alone, properly rejected, so we need not evaluate any further the November 2015 rejection per se.

However, we note an imprecision in the letter, resulting from its use of "and/or"--i.e., it held that the claim "was speculative and/or did not provide specific or credible information". (Emphasis added.) Admittedly, these two alternatives overlap, but the use of "and/or" allows the writer to avoid specifying. Was there one reason the claim was rejected? If so, which one? Or were there two reasons? If we look at the staff recommendations that preceded the decision, but see Chenery II, 332 U.S. at 196, they give no help, since one says "and/or" and the other says "or". It is unclear how we should review the WBO's multiple-

choice letter from November 2015, but we are relieved of that task by subsequent events--Mr. Lacey's concession that his first submission was properly rejected and the second submission and the operative rejection in April 2016.

### 2. The second submission and the April 2016 rejection

The second submission was quite different from the first. Its 21-page brief:

- explained Mr. Lacey's alleged experience and expertise in the relevant industry and at BP itself;

- listed sources of information and proposed ostensibly knowledgeable "expert witnesses";

- explained Mr. Lacey's reckoning of the $12.89 billion of "cover-up" expenses; and

- cited legal authorities in support of his theory of disallowing the deduction.

Without deciding whether the second submission "contain[ed] all the required information", IRM pt. 25.2.2.4(1)(b) (Aug. 7, 2015); see also IRM pt. 25.2.1.2(2)(b) (Jan. 11, 2018), we can safely say that its contents greatly exceeded those of the first submission.

However, we cannot tell what consideration, if any, the WBO gave to Mr. Lacey's second submission. The complete administrative record is not before us. The Commissioner has presented no staff memoranda or other evidence of

recommendations like those that preceded the November 2015 rejection. The WBO's response was simply to state, in its April 2016 letter:

> We considered the additional information you provided and determined your claim still does not meet our criteria for an award. Our determination remains the same despite the information contained in your latest letter.

Other than this most summary statement, there is no explanation for the WBO's April 2016 rejection of Mr. Lacey's claim.

On the one hand, the letter does say that the WBO "considered the additional information you provided". But this is the same boilerplate assertion that the WBO made to Mr. Lacey in January 2016 after his counsel sent an inquiry that provided no "additional information". In fact, the WBO sent the entire identical letter in April 2016 (after the second submission) that it had sent in January 2016 (before the second submission). The mistake in the January 2016 letter (asserting that the WBO had reviewed something that in fact it had never received) makes clear that the WBO sent that January 2016 letter without having given any actual attention to the correspondence to which it responded; and the April 2016 letter's verbatim repetition of the same representations suggests that the WBO may simply have been issuing form letters to Mr. Lacey despite his

having submitted additional information responsive to the WBO's previous criticism of his first submission.

By asserting that "[o]ur determination remains the same", the WBO's April 2016 rejection letter incorporates the previous decision reflected in its November 2015 rejection letter--i.e., that "the information provided was speculative and/or did not provide specific or credible information regarding tax underpayments or violations of internal revenue laws." (Emphasis added.) If this characterization is true about the second submission, it must be true for reasons very different from those that made it true about the first submission. Again, without deciding whether the second submission "contain[ed] all the required information", the second submission contained much more specific allegations about expenses that BP incurred, about the expenditures' purpose of covering up environmental crimes and evading environmental fines, and about the tax effect of deducting the expenses; and the brief states, with citation of authorities, a non-frivolous legal basis (not deciding at present whether it is a correct basis) for disallowing such deductions. We do not think that the Commissioner has shown that there is no genuine dispute as to whether the WBO actually considered even the face of the claim, and its purported rejection letter of April 2016 does not state the grounds for the rejection in a manner sufficient to enable us to review it.

Given the current posture of the case (in which, to decide the Commissioner's motion for summary judgment under Rule 121, we draw all reasonable inferences in favor of Mr. Lacey), we assume that the WBO issued the form letter without actual attention to his submission. We will therefore deny the Commissioner's motion for summary judgment.

## IV. Remand

When we review the WBO's determination in a whistleblower claim case, we must "decide whether the agency's decision was 'based on an erroneous view of the law or a clearly erroneous assessment of the facts.'"[24] As we have shown, on the record before us we cannot yet do so, because the WBO's decision does not explain itself. And explain it must. As we have noted, the Supreme Court in Chenery II, 332 U.S. at 196, requires us to "judge the propriety of such action solely by the grounds invoked by the agency", see supra part II.C, and this in turn requires the agency to state those grounds.[25]

---

[24]Kasper v. Commissioner, 150 T.C. at 23 (quoting Fargo v. Commissioner, 447 F.3d 706, 709 (9th Cir. 2006), aff'g T.C. Memo. 2004-13).

[25]When the Court of Appeals affirmed Cohen per curiam, it held that "[t]he Tax Court cannot compel the IRS to provide an explanation for its decision", Cohen v. Commissioner, 550 F. App'x at 11, which, in context, referred to the decision not to "proceed with an administrative or judicial action", id. (quoting Cooper II, 136 T.C. at 600). But as to determinations that we do have jurisdiction

(continued...)

However, at this point it would be premature to remand this case to require the WBO to articulate a decision that we can review. To hold, on the partial record before us, that a genuine dispute exists as to whether the WBO failed to consider the claim does not resolve that dispute. The complete administrative record might shed the necessary light, and it remains to be seen whether it does so.

We will deny the Commissioner's motion for summary judgment, will deny Mr. Lacey's request to remand, and will order the parties to recommend a schedule for further proceedings in this case.

To that end,

<u>An appropriate order will be issued</u>.

Reviewed by the Court.

GALE, LAUBER, ASHFORD, URDA, COPELAND, and JONES, <u>JJ</u>., agree with this opinion of the Court.

PARIS, <u>J</u>., did not participate in the consideration of this opinion.

---

[25](...continued)
to review, some explanation of the WBO's decision is of course necessary. <u>See</u> <u>AT&T Wireless Servs., Inc. v. FCC</u>, 270 F.3d 959, 968 (D.C. Cir. 2001) ("Basic principles of administrative law require the agency to 'examine the relevant data and <u>articulate a satisfactory explanation</u> for its action'" (emphasis added) (quoting U.S. Telecom Ass'n v. FCC, 227 F.3d 450, 461 (D.C. Cir. 2000))).

THORNTON, J., concurring:  The opinion of the Court holds that we may review for abuse of discretion a decision by the IRS Whistleblower Office to reject a claim for failing to meet certain threshold conditions.  This holding is consistent with this Court's jurisdictional grant in section 7623(b)(4) as well as the "presumption favoring judicial review of administrative action".  Block v. Cmty. Nutrition Inst., 467 U.S. 340, 349 (1984); see Sackett v. EPA, 566 U.S. 120 (2012); Stovic v. R.R. Ret. Bd., 826 F.3d 500, 505-506 (D.C. Cir. 2016).  In the course of our review, however, we cannot compel the IRS to commence an audit or to provide an explanation of its decision not to commence an audit.  See Cohen v. Commissioner, 550 F. App'x 10, 11 (D.C. Cir. 2014), aff'g 139 T.C. 299 (2012).  Accordingly, insofar as a decision to reject a whistleblower claim implicates a decision that the IRS will not commence an audit, our review of such a rejection is necessarily quite circumscribed.

The materials available to the Court in support of respondent's motion for summary judgment appear to show that, although petitioner's revised and resubmitted claim was received by the IRS in Ogden, Utah, on March 31, 2016, it was not received by the Whistleblower Office until April 5, 2016.  The Whistleblower Office denied the resubmitted claim on April 6, 2016, on the exact same grounds as petitioner's earlier, less detailed claim.  On these facts the Court

will deny respondent's motion for summary judgment on the ground that there is a genuine dispute of material fact as to whether the Whistleblower Office issued its rejection letter without actual attention to the whistleblower's submission. See op. Ct. pp. 42-43. Whether the Whistleblower Office actually abused its discretion in rejecting the claim is a question that remains open for another day, once the complete administrative record is before the Court. On that understanding, I concur with the opinion of the Court.

GALE, MARVEL, MORRISON, KERRIGAN, LAUBER, URDA, and COPELAND, JJ., agree with this concurring opinion.

URDA, J., concurring: The opinion of the Court today recognizes the distinction between the requirements for a whistleblower to recover a mandatory award under section 7623(b)(1) and the authority granted to this Court to review determinations regarding such awards under section 7623(b)(4). Although we have not articulated this point before, see Cooper v. Commissioner, 136 T.C. 597 (2011); Cohen v. Commissioner, 139 T.C. 299 (2012), aff'd, 550 F. App'x 10 (D.C. Cir. 2014), the Court's conclusion is sound. I concur.

I.      The Plain Text of Section 7623(b) Supports the Court's Reading.

Congress provided this Court with jurisdiction over "[a]ny determination regarding an award under paragraph (1), (2), or (3)". Sec. 7623(b)(4). Both the Court and the dissent agree that a rejection of a claim at the threshold counts as such a determination and that we have jurisdiction to review a rejection. See op. Ct. pp. 33-37; dissenting op. pp. 60-61.

There the Court and the dissent part ways, with the dissent arguing that our review is limited to the determination of award amounts. The dissent notes that a whistleblower cannot qualify for an award unless the IRS institutes an administrative or judicial action and collects proceeds. The dissent then concludes that we have no choice but to grant summary judgment to respondent here because there was no action and there were no proceeds. See dissenting op. pp. 58-59.

With due respect, the dissent is incorrectly conflating the requirements for a whistleblower to obtain an award under section 7623(b)(1) with our review under subsection (b)(4).

We start with the text of the two provisions, as we must. See, e.g., Jimenez v. Quarterman, 555 U.S. 113, 118 (2009); Klein v. Commissioner, 149 T.C. 341, 351 (2017). The dissent is correct that paragraph (1) requires an administrative or judicial action and the collection of proceeds for a whistleblower to qualify for an award. But Congress did not impose similar limitations on our review. To the contrary, paragraph (4) speaks in broad terms, tasking us with the review of "[a]ny determination regarding an award under paragraph (1), (2), or (3)". "Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" United States v. Gonzales, 520 U.S. 1, 5 (1997) (quoting Webster's Third New International Dictionary 97 (1976)). In ordinary usage, "regarding" means "[i]n reference to", "with respect to", or "concerning". The American Heritage Dictionary 1469 (4th ed. 2006). Our authority to review any determination with respect to an award strikes me as sweeping up considerably more than just award amount determinations.

Relying on the canon of consistency, the dissent argues that the use of the word "determination" in both paragraphs (1) and (4) signals that our review is

limited to award amount determinations.  The canon of consistency, however, "readily yields" to context.  Util. Air Regulatory Grp. v. EPA, 573 U.S. 302, 320 (2014) (quoting Envtl. Def. v. Duke Energy Corp., 549 U.S. 561, 574 (2007)). Paragraph (1) provides that the "determination of the amount of such award by the Whistleblower Office shall depend upon the extent to which the individual substantially contributed to such action", while paragraph (4) allows a whistleblower to appeal "[a]ny determination regarding an award under paragraph (1), (2), or (3)".  The word "determination" is being used in a conspicuously different context in each paragraph.  The dissent offers no persuasive reason for importing the specific type of determination described in paragraph (1) to limit the general reference in paragraph (4) to "[a]ny determination" when Congress, which drafted both provisions contemporaneously, chose not to do so.

Had Congress intended to limit our review to award amount determinations, there are several ways it could have done so, e.g., "any determination regarding the amount of an award under paragraph (1), (2), or (3)" or "any determination of an amount under paragraph (1), (2), or (3)".  But Congress did not use such a narrow term.  And we may not rewrite the statute to add it.  Puerto Rico v. Franklin Cal. Tax-Free Tr., 579 U.S. ___, ___, 136 S. Ct. 1938, 1949 (2016) ("[O]ur constitutional structure does not permit this Court to 'rewrite the statute

that Congress has enacted.'" (quoting <u>Dodd v. United States</u>, 545 U.S. 353, 359 (2005))).

II.     <u>The Court's Conclusion Is Consistent With Relevant Principles of Administrative Law</u>.

The dissent also suggests that the Court's review of the rejection of Mr. Lacey's claim would be improper and would inevitably run afoul of <u>Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.</u>, 435 U.S. 519, 524 (1978).  I do not agree.

We have previously held that we review a determination regarding an award for abuse of discretion.  <u>Kasper v. Commissioner</u> (<u>Kasper II</u>), 150 T.C. 8, 21-23 (2018).  Under the normal principles governing such review, we examine whether the determination--the Whistleblower Office's (WBO) rejection of a claim for an award in Mr. Lacey's case--was reasonable (and reasonably explained).  <u>See</u> <u>Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 48-49 (1983).  The absence of an action or collected proceeds does not necessarily answer whether the IRS' rejection of Mr. Lacey's claim at the threshold--as lacking merit on its face, without the need for any further investigation--was reasonable or reasonably explained.

If, after the parties submit the full administrative record, we were to decide that the WBO abused its discretion in rejecting Mr. Lacey's claim for an award, we would presumably remand the case for further consideration or to allow the WBO to more fully articulate its rationale. See, e.g., Whistleblower 769-16W v. Commissioner, 152 T.C. ___, ___ (slip op. at 12) (Apr. 11, 2019) (holding in light of Kasper II that the Tax Court may in appropriate circumstances remand a whistleblower case to the WBO for further consideration). Although our authority in this regard is no doubt narrowly circumscribed (in no small part because we cannot order the Secretary to initiate a proceeding per Vt. Yankee Nuclear Power Corp.), it is not nonexistent. This interpretation also avoids the strange result that, in the context of a rejection (a species of determination created by the IRS itself), we would have jurisdiction to do nothing but grant summary judgment in favor of the Commissioner.

III.    The Court of Appeals' Decision in Cohen Is Not Contrary.

The Court of Appeals for the D.C. Circuit's opinion in Cohen v. Commissioner, 550 F. App'x 10, does not require a different result. Under the doctrine established in Golsen v. Commissioner, 54 T.C. 742, 757 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971), we generally "follow a Court of Appeals decision which is squarely in point where appeal from our decision lies to that Court of

Appeals and to that court alone."  This doctrine applies only where the position of a Court of Appeals signals inevitable reversal upon appeal and does not apply where the precedent contains distinguishable facts or law.  See, e.g., Tigers Eye Trading, LLC v. Commissioner, 138 T.C. 67, 75 (2012), aff'd in part, rev'd in part on other grounds and remanded sub nom. Logan Tr. v. Commissioner, 616 F. App'x 426 (D.C. Cir. 2015).

We are not bound to follow the D.C. Circuit's decision here.  As an initial matter, the legal landscape surveyed in Cohen was markedly different from today's terrain.  The "rejection" category of determination was not instituted until after the D.C. Circuit issued its decision, and that court thus had no occasion to address the issue here, i.e., the scope of our review of such a determination.  See sec. 301.7623-3, Proced. & Admin. Regs. (effective Aug. 12, 2014).  Moreover, the D.C. Circuit's per curiam unpublished opinion offers no analysis of this issue that would allow us to conclude that inevitable reversal faces the opinion of the

Court.[1]  In these circumstances the <u>Golsen</u> doctrine does not oblige us to follow

<u>Cohen</u>.

     GALE, GUSTAFSON, LAUBER, ASHFORD, and COPELAND, <u>JJ</u>., agree with this concurring opinion.

     JONES, <u>J</u>., joins only in part I of this concurring opinion.

---

[1]This Court also has questioned the applicability of the <u>Golsen</u> doctrine to unpublished opinions because of their nonprecedential nature.  <u>See</u> <u>Bennett Land Co. v. Commissioner</u>, 70 T.C. 904, 907 n.3 (1978); <u>Ruegsegger v. Commissioner</u>, 68 T.C. 463, 466-467 (1977).

BUCH, J., dissenting:  Mr. Lacey made a series of submissions to the Commissioner suggesting that his former employer underpaid its taxes.  The Commissioner did not follow up on any of those submissions by opening or expanding an examination.  Without an examination's having been opened or expanded on the basis of the information provided, it follows (and nobody disputes) that no proceeds were collected as a result of whatever information might have been provided by Mr. Lacey.

If the Commissioner initiates an administrative or judicial proceeding as a result of information provided by a whistleblower, and if that action results in proceeds' being collected, then the whistleblower is entitled to an award.  Sec. 7623(b)(1).  And if the whistleblower is dissatisfied with the amount of that award, he can petition our Court to review whether the Commissioner abused his discretion in determining the amount of the award.  Sec. 7623(b)(4).

It is undisputed that the Commissioner did not initiate an administrative or judicial proceeding.  It is undisputed that the Commissioner did not collect any proceeds.  Because there was no action and there were no proceeds, it follows that there can be no award.  The Commissioner is entitled to summary judgment.

The opinion of the Court would put this Court in the position of reviewing the Commissioner's decisions as to which claims to reject and which to pursue.

But in drafting section 7623 Congress made clear that the scope of our review over whistleblower determinations is limited to the amount of an award allocated to a whistleblower. And both our caselaw and the caselaw of the Court of Appeals for the D.C. Circuit, the court to which this case is appealable, have followed the statutory limit on the scope of our review.

Because the opinion of the Court would have us inquire into the Commissioner's decision making as to which whistleblower claims to investigate and which to ignore, I dissent.

The opinion of the Court is inconsistent with the statute.

Nondiscretionary awards to whistleblowers are governed by section 7623(b). And our review of such awards is governed by section 7623(b)(4), which sets forth the scope of review. On its surface, that scope appears to be rather broad. That provision grants us power to review "[a]ny determination regarding an award under paragraph (1), (2), or (3)". Sec. 7623(b)(4). If we follow those cross-references, it is clear that the scope of our review is the amount of the award.

Determinations regarding awards are made under section 7623(b)(1),[1] which provides in full:

---

[1] Sec. 7623(b)(2) and (3) serves only to reduce or eliminate the amount of an award that might otherwise be granted under para. (1).

> If the Secretary proceeds with any administrative or judicial action described in subsection (a) based on information brought to the Secretary's attention by an individual, such individual shall, subject to paragraph (2), receive as an award at least 15 percent but not more than 30 percent of the proceeds collected as a result of the action (including any related actions) or from any settlement in response to such action (determined without regard to whether such proceeds are available to the Secretary). The determination of the amount of such award by the Whistleblower Office shall depend upon the extent to which the individual substantially contributed to such action.

The only determination referenced in section 7623(b)(1) is the determination of the amount of the award. By using "determination" in paragraph (4), Congress explicitly signaled to its prior use of "determination" in paragraph (1), which is a determination regarding the amount of an award. This reading rests on the well-established rule of statutory interpretation that the same word used in the same statute generally has the same meaning. IBP, Inc. v. Alvarez, 546 U.S. 21, 34 (2005); Fla. Country Clubs, Inc. v. Commissioner, 122 T.C. 73, 87 (2004), aff'd, 404 F.3d 1291 (11th Cir. 2005).

A second textual clue reinforces this distinction between the Commissioner's unfettered discretion whether to proceed with an action and the reviewable determination of the amount of an award. The text of the statute makes clear that it is the Secretary who decides whether to initiate an administrative or judicial proceeding ("If the Secretary proceeds"), but it is the Whistleblower

Office that determines the amount of the award. When Congress uses two different words, we presume that the difference was intentional and that a different meaning was intended. Henson v. Santander Consumer USA Inc., 582 U.S. ___, ___, 137 S. Ct. 1718, 1723 (2017).

The opinion of the Court takes its own odd twist on this distinction in the wording. The opinion of the Court tries to distinguish a situation where the Whistleblower Office decides not to forward a case on for examination from one where an IRS operating division decides not to pursue a case. The opinion of the Court states that Mr. Lacey does not challenge "a decision by IRS examination personnel" or "a decision by IRS collection personnel" or ask this Court to review actions by IRS examination or collection personnel. See op. Ct. p. 33. "Rather, Mr. Lacey challenges action by the * * * [Whistleblower Office]". See id. Because existing caselaw makes clear that we cannot compel an IRS operating division to initiate an administrative or judicial proceeding, the opinion of the Court appears to hinge our ability to review whether the Secretary should proceed with an action on the question of to whom the Secretary has delegated the responsibility to make that decision.

But the Whistleblower Office does not exist outside the IRS or the purview of the Secretary. The Whistleblower Office, like the rest of the IRS, is under the

Secretary of the Treasury, and a reference to the Secretary is a reference to the Secretary of the Treasury or his delegate. Sec. 7701(a)(11)(B). We do not oversee the Secretary's decisions regarding which cases to pursue, regardless of whether that decision is delegated to an operating division or the Whistleblower Office. The "formulation of procedures was basically to be left within the discretion of the agencies to which Congress had confided the responsibility for substantive judgments." Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc., 435 U.S. 519, 524 (1978). This Court does not get to decide how the IRS exercises its discretion to begin or not begin an audit of a taxpayer against whom a whistle has been blown.

The opinion of the Court erroneously claims that the Whistleblower Office does not determine whether the Commissioner will proceed with an action and that we may review the Whistleblower Office's decision-making process in deciding whether to forward matters for further consideration. The opinion of the Court states: "Clearly it is not the WBO but rather an IRS 'Operating Division' that makes the 'determination not to proceed with an action'." See op. Ct. p. 35 (quoting section 301.7623-4(d)(2)(ii), Proced. & Admin. Regs.). But the act creating the Whistleblower Office explicitly provides that the Whistleblower Office may determine whether to proceed with an action. It specifically allows the

Whistleblower Office to refer material to another division or analyze the information itself: The Whistleblower Office "shall analyze information received * * * and either investigate the matter itself or assign it to the appropriate Internal Revenue Service office". Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, sec. 406(b)(1)(B), 120 Stat. at 2960.

We are authorized by section 7623(b)(4) to review the determination of the amount of an award. Nothing in the statute authorizes us to review the decision whether to proceed with an action, regardless of whether that decision is made in the Whistleblower Office or in an operating division.

The opinion of the Court is inconsistent with the regulations.

The regulations under section 7623 reinforce this plain reading of the statute and confirm that the Secretary's decision not to pursue a claim, for whatever reason, is not a determination regarding an award that is subject to our review.

The regulations explain the process for handling a whistleblower claim. Once the Whistleblower Office recommends payment of an award to a whistleblower, it issues a preliminary award recommendation, which is sent to the whistleblower. Sec. 301.7623-3(b)(1), (c)(1), Proced. & Admin. Regs. The whistleblower may respond to the preliminary recommendation. Id. para. (c)(3). Eventually, a determination letter is sent to a whistleblower after the

Whistleblower Office has finalized the "amount of the award under section 7623(b)(1), (2), or (3)". Id. subpara. (6).

The regulations distinguish an award determination from a rejection. A preliminary award is made for claims "other than * * * rejections or denials". Id. subpara. (1). The regulations define "rejection" as "a determination that relates solely to the whistleblower and the information on the face of the claim that pertains to the whistleblower." Id. subpara. (7). If the Whistleblower Office rejects a claim on its face, the rules governing a determination letter do not apply. Id. The rejection of a claim on its face is thus outside the scope of our review.

A rejection being outside the scope of our review does not mean there is nothing for us to consider. If the Whistleblower Office denies an award on the basis of not having initiated an administrative or judicial proceeding, that is tantamount to a determination of an award of zero. From that determination, we can consider whether a whistleblower is entitled to an award. We can, for example, consider whether, contrary to his stated rejection, the Commissioner in fact initiated an administrative or judicial proceeding. If, on the basis of our review of the administrative record, the Whistleblower Office denied an award on the basis of an erroneous claim of not having initiated a proceeding, we could

remand the matter for determination of what, if any, proceeds might have been collected and what, if any, award is to be granted.

The opinion of the Court is inconsistent with existing caselaw.

Our caselaw both expressly and implicitly limits our review to the Whistleblower Office's determination of the amount of an award. We have previously reviewed denials from the Whistleblower Office, but we have limited our review to determining whether an action occurred, whether proceeds were collected, or the amount of those proceeds. We have previously refused to consider questions regarding whether the Commissioner should have pursued a whistleblower referral.

In Cooper v. Commissioner, 136 T.C. 597, 600-601 (2011), we rejected the idea that section 7623(b)(4) gave us jurisdiction to review the Secretary's choice to pursue, or not to pursue, an action against a taxpayer.[2] The whistleblower had asked us to direct the Commissioner to investigate a taxpayer. Id. at 600. We declined, stating that "we have jurisdiction only with respect to the Commissioner's award determination." Id. "[W]histleblower awards are preconditioned on the Secretary's proceeding with an administrative or judicial

---

[2]We noted that "Congress has charged the Secretary with the responsibility of seeking tax revenue in every possible situation. Secs. 7601 and 7602." Cooper v. Commissioner, 136 T.C. 597, 600-601 (2011).

action. * * * If the Secretary does not proceed, there can be no whistleblower award." Id. at 601.

And in Cohen v. Commissioner, 139 T.C. 299, 301-302 (2012), aff'd, 550 F. App'x 10 (D.C. Cir. 2014), we made clear that our review begins after the Commissioner commences an action and collects proceeds. In Cohen the whistleblower had filed a petition asking this Court to order the Commissioner to reopen a claim denied by the Whistleblower Office. We echoed our reasoning from Cooper, stating we have power only to review an award determination. Id. at 302. We were clear and explicit on the limits to the scope of our review: "Section 7623(b) does not provide any relief before whistleblower information leads to an administrative or judicial action and the collection of proceeds." Id. at 304. Cohen was affirmed by the Court of Appeals for the D.C. Circuit, the court to which this case is appealable.

In McCrory v. Commissioner, T.C. Memo. 2018-12, we faced an issue nearly identical to the one presented by Mr. Lacey. In McCrory, we denied a whistleblower's motion to remand the Commissioner's rejection of the whistleblower's claims. We explained: "Granting * * * [the whistleblower's] remand motion would be akin to directing the IRS to commence an administrative

proceeding against taxpayers it chose not to pursue. Having no authority to do so, we will grant summary judgment". Id. at *9.

The opinion of the Court is contrary to our caselaw already addressing this issue. We have consistently, until today, held that section 7623(b)(4) allows us to review an award determination. We have, until today, consistently granted summary judgment for the Commissioner when a whistleblower appeals a determination not to proceed with an administrative or judicial proceeding. Following existing precedent requires that we grant summary judgment in favor of the Commissioner.

Chenery does not require that we deny summary judgment.

The opinion of the Court suggests that, because the Whistleblower Office's rejection did not refer to a lack of administrative action or collection of proceeds as the reason for rejection, we may not consider those factors in our review. See op. Ct. pp. 30-31 (citing SEC v. Chenery Corp., 322 U.S. 194, 196 (1947)). The opinion of the Court suggests we are barred from considering those issues. See op. Ct. p. 37.

The opinion of the Court misses two fatal flaws in its position. First, by rejecting Mr. Lacey's claim at the outset, the Whistleblower Office made clear that no action was taken on the claim. If there was no action, there can be no proceeds

as a result of the action.  See sec. 7623(b)(1).  The Commissioner is not required to articulate every factor in his decision, and we must "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."  Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974).  Second, we have long held in other contexts that we do not remand cases where the outcome on remand is clear.  Zapara v. Commissioner, 126 T.C. 215, 225 (2006), supplementing 124 T.C. 233 (2005).  It would be a meaningless exercise for the Court to remand this case only for the Whistleblower Office to add to its rejection letter a line stating that the claim is denied because no administrative or judicial proceeding was initiated and no proceeds were collected, especially when these facts are already known by the Court and the parties.

The Commissioner did not take any action on the basis of the information Mr. Lacey provided.  No proceeds were collected on the basis of the information Mr. Lacey provided.  These facts require that we grant summary judgment in favor of the Commissioner.  The opinion of the Court would instead have us interpose ourselves into the Commissioner's decisions over which claims to pursue.  That is not within the scope of our review, and for that reason, I dissent.

FOLEY, NEGA, and PUGH, JJ., agree with this dissent.