T.C. Memo. 2020-141

UNITED STATES TAX COURT

JOHN WORTHINGTON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9026-19W.                    Filed October 8, 2020.

P submitted to the Whistleblower Office ("WBO") of the
Internal Revenue Service ("IRS") a claim on Form 211, "Application
for Award for Original Information", as later supplemented, alleging
that an entity or operation of law enforcement agencies of cooperating
counties ("T") lacked status as a legal entity and therefore illegally
collected, from court awards, millions of dollars of "tax free illegal
monies".  A "classifier" in the IRS's Small Business/Self-Employed
("SB/SE") Operating Division initially determined that P's claim
"may meet [I.R.C. sec.] 7623(b) criteria" and proposed that the matter
be referred for "Criminal Investigation".  However, other WBO
personnel performed "research" about T, concluded that the
allegations in P's claim "appear to be speculative", and recommended
that the claim be returned to the classifier "for consideration of this
additional information and for additional research."  The SB/SE
classifier then determined that "the claim lacks specific/credible
information, is purely speculative in nature, or does not allege a tax
issue" and recommended "Reject the Claim".  The WBO issued a

[*2]  final determination letter that stated:  "The claim has been rejected because the IRS decided not to pursue the information you provided."

P filed a petition in this Court.  R moved for summary judgment under Tax Court Rule 121, arguing that "the Whistleblower Office did not abuse its discretion in <u>rejecting</u> petitioner's claim for award" and also asserting that "the Whistleblower Office did not abuse its discretion in <u>denying</u> petitioner's claim for award".  (Emphasis added.)  P filed a cross-motion for summary judgment, asking the Court to "order strict compliance with the intent of congress and the IRS manual, to 'require the whistleblower office to analyze whistleblower claims' and analyze them under the proper IRS codes supported by form 211."

<u>Held</u>:  P's motion will be denied because the administrative record does not show that the WBO never analyzed his claim and because the Court cannot compel the WBO to act as P requests.

<u>Held</u>, <u>further</u>, R's motion will be denied because the WBO's final determination letter is equivocal as to whether it constituted a threshold "rejection" based on the face of P's claim or a substantive "denial" making a decision not to audit after performing research outside the claim.

John Worthington, for himself.

<u>Nicholas R. Rosado</u>, for respondent.

**[\*3]**                    MEMORANDUM OPINION

GUSTAFSON, <u>Judge</u>:  Petitioner John Worthington has appealed, pursuant

to section 7623(b)(4),[1] the determination of the Whistleblower Office ("WBO") of

the Internal Revenue Service ("IRS") that denies him a whistleblower award.

Respondent, the Commissioner of the IRS, has filed a motion for summary

judgment under Rule 121, and Mr. Worthington has filed a cross-motion.  We will

deny both motions.

Background

<u>Mr. Worthington's Forms 211</u>

The WBO first received from Mr. Worthington a Form 211, "Application

for Award for Original Information" (along with attachments), dated

November 14, 2018, on which he erroneously named himself as the target

taxpayer.  The WBO sent Mr. Worthington a "Preliminary Rejection Letter", the

grounds of which were that "[t]he Form 211 lists the taxpayer and whistleblower

[as] the same individual".  Mr. Worthington then sent the WBO a second,

supplemental Form 211 (with attachments), dated December 10, 2018.  We refer to

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code of 1986 as in effect at all relevant times (codified in 26 U.S.C.),
and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*4] the two Forms 211 and their attachments collectively as Mr. Worthington's "claim".

The entity or operation ("the Target") as to which Mr. Worthington sent information is the product of "interlocal agreements" in which the "component entities" are county law enforcement agencies in a State. Mr. Worthington has been involved in a controversy with the target and those agencies about whether, in what sense, and to what extent the target is a "legal entity". In an attachment to his claim, Mr. Worthington summarizes the situation as follows:

> [Target] prosecutors write legal briefs and appear in administrative hearings claiming they are * * * [Target] and request monies for * * * [Target]. The court awards monies to * * * [Target]. Those illegal monies are disbursed to the component entities and * * * [Target] policy Board. (Exhibit 3)

> [Target] prosecutors write legal briefs requesting fines, fees, and restitution for * * * [Target]. Three separate * * * State Courts collect monies from defendants for * * * [Target]. (Exhibit 4.)

> The three courts send checks made out to * * * [Target], which get cashed and placed in the * * * [Target] fund. (Exhibit 5a, 5b, 5c and 5d).

> The * * * [Target] policy Board spends the tax free monies on * * * [Target] employees, they could not have hired otherwise. * * * [Target] also agrees to reimburse the component entities for expenses out of the tax free illegal monies. (Exhibit 6a and 6b)

**[*5]**   [Target] component entit[i]es are judicially estopped from claiming * * * [Target] was a legal entity, having argued in multiple cases that * * * [Target] was not a legal entity.  (Exhibit 7a and 7b)

The * * * State Supreme Court runs a JIS system [Judicial Information System] which keeps track of the monies illegally collected for * * * [Target].  (Exhibit 8)

The * * * State Courts have ruled that * * * [Target] does not legally exist and is also under the * * * County Umbrella.  (Exhibit 9)

The * * * State Legislature spends illegally collected * * * [Target] monies pursuant to a statute.

          *        *        *        *        *        *        *

In closing, * * * [Target's] component entities knew they could not use * * * [Target] as a legal entity, yet they chose to use * * * [Target] as a legal entity and collected millions of dollars in illegal revenue from the year 200[0] to the year 2018.

Millions of untaxed revenue was obtained using the admitted "non-entity["] * * * [Target].  The illegally collected monies should be returned or the component entities should pay taxes on the revenue collected and spent by the * * * [Target] policy board on employees they knew they could not have.

Organized crime statutes were violated knowingly and the U.S. Tax codes that routinely apply to organized crime organizations should also apply to these government entities or a clear double standard of justice would be created.

Upon receipt of petitioner's supplemental Form 211, the WBO sent

Mr. Worthington an acknowledgment letter dated March 22, 2019, informing him

that the WBO assigned a claim number to his claim.

**[*6]** <u>The WBO's first referral to SB/SE</u>

On that same date, the WBO sent Mr. Worthington's claim to a "classifier" in the IRS's Small Business/Self-Employed ("SB/SE") Operating Division. His claim was assigned to SB/SE Classifier Marie Holt.

Ms. Holt in SB/SE completed what the Commissioner calls a "Classification Sheet" (though it does not bear that title). It was undated but reflected "Classification Research" dated "4/12/2019". A blank entitled "IRC 7623(a)/(b)" stated: "Allegations may meet 7623(b) criteria". The "Allegation Summary" on that sheet stated: "Organized Crime, RICO Act"; the "Classification's Recommendation" stated: "Criminal Investigation"; and the "Basis for the Recommendation" stated the following four bullet points:

- Unable to identify the TP's EIN through IDRS research on Accurint and IDRS.

- Reviewed the documents provided with Form 211in paper and on the USB drive.

- WB states that * * * [Target] is not a legal entity and should not be collecting funds. Documents provided were copies of checks written to * * * [Target]. <u>It is not a federal tax IRS issue to determine if the TP is a legal entity to represent in court proceedings. Review of the documents for a federal tax issue was unsuccessful. Classifier has not found a federal tax issue for to</u> [sic] <u>be addressed by the IRS.</u>

**[*7]** • WB has identified Organized Crime and RICO Act. Allegations involve amounts greater than $1M and Title 18 and 31 allegations. <u>Send this claim to Criminal investigation to consider</u>. [Emphasis added.]

<u>The WBO's reaction to SB/SE's Classification Sheet</u>

On April 18, 2019, Tax Examining Technician Ashlee George emailed Program Manager Steven Mitzel and informed him that Mr. Worthington's claim met the referral criteria for criminal investigation. Ms. George had evidently received Ms. Holt's "Classification Sheet". (From context it appears that Ms. George and Mr. Mitzel both worked in the WBO.)

However, when the claim was then forwarded to Laura Meis, a senior tax analyst with the WBO, she emailed Ms. George as follows:

We are not going to forward this claim to CI as a referral at this time.

Since the classifier could not identify the entity, it is uncertain that there is unreported income.

[Target] is a multi-jurisdictional narcotics task force serving * * * Counties. Callers have the option of giving their name or remaining anonymous. This is a 24 hour line to report suspected narcotics activity, i.e. Marijuana growing, drug houses, and meth labs.

This is also what I found on researching this claim regarding the * * * [Target] taxpayer and the WB * * * [the whistleblower, i.e., Mr. Worthington].

**[*8]** Ms. Meis's email then includes, from a court opinion, a long excerpt that begins "Worthington sued * * * [Target] complaining of a * * * violation" of a State statute that appears to be analogous to the Federal Freedom of Information Act, 5 U.S.C. sec. 552 (2018). The excerpt includes: "We hold that * * * [Target] is not a separate legal entity subject to suit. Accordingly, the * * * court properly dismissed Worthington's complaint for failure to state a claim. Affirmed." The court opinion that Ms. Meis quoted appears not to be in the certified administrative record (except for her quotation of the excerpt). Ms. Meis's email concluded by stating:

> From this information, the allegation[s] in the filed F211 appear to be speculative. I recommend you return it to the classifier for consideration of this additional information and for additional research.

The WBO's second referral to SB/SE

As Ms. Meis recommended, Mr. Worthington's claim was returned to SB/SE "for 2nd look". Ms. Holt in SB/SE then prepared another Classification Sheet that updated the previous sheet completed April 12, 2019. On this updated sheet the blank entitled "IRC 7623(a)/(b)" stated: "Treat as a 7623(a) claim for purposes of the rejection. The allegations may describe an amount greater than $2 million, but the claim lacks specific/credible information, is purely speculative

**[*9]** in nature, or does not allege a tax issue". The "Classification's

Recommendation" stated not "Criminal Investigation" (as on the prior sheet) but

rather:

> Reject the Claim: Allegations are not specific, credible, or are
> speculative - Allegations are purely speculative in nature.

The sheet restated the four bullet points that were on her previous Classification

Sheet, see supra pp. 6-7, and then added:

- Researched TP on Google classifier is still unable to identify
  the TP's EIN.

- Reviewed information from CI Analyst. The allegations appear
  speculative, it appears this entity is not an independent legal
  entity. After reviewing the form 211 attachments, additional
  information found by CI it appears that the TP is not a legal
  entity. Allegations are speculative we are not able to
  verify/validate the alleged violations of the RICO Act and
  Organized Crime. No specific and credible information about a
  federal tax issue or noncompliance. Rejecting claim for failing
  to include specific and credible information to support a
  potential tax violation/allegation, as well as documentation to
  support the claim.

Mr. Worthington's claim was then transmitted back to the WBO.

The WBO's reaction to SB/SE's second Classification Sheet

On May 9, 2019, after reviewing the second Classification Sheet completed

by Ms. Holt in SB/SE, Ms. George drafted what the Commissioner calls an

"Award Recommendation Memorandum". That title does not appear on the

[*10] memorandum, which is in fact the same updated "Classification Sheet" that Ms. Holt in SB/SE prepared--with her entry for "IRC 7623(a)/(b)", her "Allegation Summary", the "Classification's Recommendation", and her bullet points giving the "Basis for the Recommendation". On the header of that form Ms. George added her name as sender and, as the recipient, added "Keith DeHart-Manager, Initial Claim Evaluation". In a formerly blank box for "Summary Recommendation" she added: "Recommended for rejection by classification. Approval to issue the rejection letter authorized under the Delegation Order, dated July 14, 2016".

Determination letter

On May 9, 2019, the WBO mailed to Mr. Worthington a "Final Decision Under Section 7623(a)" that stated as follows:

> The Whistleblower Office has considered your Form 211, Application for Award for Original Information, dated 12/10/2018. Internal Revenue Code section 7623 provides that an award may be paid only if the information provided results in the collection of tax, penalties, interest, additions to tax, or additional amounts. The Whistleblower Office has made a final decision to reject your claim for an award.
>
> The claim has been rejected because the IRS decided not to pursue the information you provided.
>
> This letter is a final determination for purposes of filing a petition with the United States Tax Court. If you disagree with this determination, you have 30 days from the date of this letter to file a

**[*11]** petition with the Tax Court.  Information about filing a petition can be found on the Tax Court's website.  * * *

Tax Court proceedings

On June 3, 2019, Mr. Worthington filed his petition with this Court.

On March 4, 2020, the Commissioner filed his motion for summary judgment, along with a supporting declaration, and exhibits.  (The Commissioner also filed a certification of the administrative record and the documents in that record.)  The Commissioner's motion asks us to hold that "the Whistleblower Office did not abuse its discretion in rejecting petitioner's claim for award" and also asserts that "the Whistleblower Office did not abuse its discretion in denying petitioner's claim for award".  (Emphasis added.)

Mr. Worthington filed a cross-motion that asserts the WBO abused its discretion in two respects:  (1) He states that "the final denial was based upon the decision of the agency employee made prior to the supplemental information. * * * In fact they admit on the record to deciding not to use the information, while using a classification sheet that stated there was no supporting documentation."  (2) He states that "the agency decision was improperly made pursuant to 7623(a) when it should have been made pursuant to 7623(b)."

**[*12]**                                    <u>Discussion</u>

I.      <u>Summary judgment standards</u>

Both parties have filed motions for "summary judgment", and the

Commissioner's motion explicitly invokes Rule 121 (the Tax Court's analog to

Rule 56 of the Federal Rules of Civil Procedure).  Generally speaking, under

Rule 121(b) the Court may grant summary judgment when "there is no genuine

dispute as to any material fact and * * * a decision may be rendered as a matter of

law."  <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520 (1992), <u>aff'd</u>, 17 F.3d

965 (7th Cir. 1994).  The Commissioner's motion recites this standard.

However, we have recently observed that--

> this summary judgment standard is not generally apt where we must
> confine ourselves to the administrative record to decide whether there
> has been an abuse of discretion. * * *  [I]n a "record rule"
> whistleblower case there will not be a trial on the merits.  In such a
> case involving review of final agency action under the APA,
> summary judgment serves as a mechanism for deciding, as a matter of
> law, whether the agency action is supported by the administrative
> record and is not arbitrary, capricious, an abuse of discretion, or
> otherwise not in accordance with law.  * * *

<u>Van Bemmelen v. Commissioner</u>, 155 T.C. __, __ (slip op. at 25-26) (Aug. 27,

2020).  As we explain below, neither party's motion for summary judgment is

supported by the administrative record.

**[\*13]** II.     Whistleblower principles

A.     Threshold evaluation and rejection

Section 7623(b) provides the circumstances in which the IRS shall give (in the words of the title to subsection (b)) "Awards to Whistleblowers" and charges the WBO with performing the initial evaluation of whistleblower claims to determine whether they meet the minimum standards for an award.  See 26 C.F.R. sec. 301.7623-1(c)(4), Proced. & Admin. Regs.  This initial evaluation occurs before any further action on the information set forth in the claim.  The threshold criteria by which the WBO evaluates a claim's potential eligibility for an award include that the claim:

- "contain[s] specific * * * information";

- "contain[s] * * * credible information";

- provides "information that the whistleblower believes will lead to collected [tax] proceeds";

- reports "fail[ure] to comply with the internal revenue laws";

- "identif[ies] the person(s) believed to have failed to comply with the internal revenue laws";

- "provide[s] substantive information, including all available documentation"; and

- does not "provide speculative information".

[*14] Lacey v. Commissioner, 153 T.C. 146, 160 (2019) (quoting 26 C.F.R. sec. 301.7623-1(c)(1), (4)).

If a claim fails to meet those criteria, then the WBO may summarily "reject" the claim without further consideration. "A rejection is a determination that relates solely to the whistleblower and the information on the face of the claim that pertains to the whistleblower." 26 C.F.R. sec. 301.7623-3(c)(7). Such a threshold rejection by the WBO will necessarily preclude any subsequent administrative or judicial action against any taxpayer and any subsequent collection of proceeds from the taxpayer on the basis of the information provided. See Lacey v. Commissioner, 153 T.C. at 168-169.

B.    Substantive consideration and denial

A "denial" is different from a "rejection". "A denial is a determination that relates to or implicates taxpayer information." 26 C.F.R. sec. 301.7623-3(c)(8). The WBO handles a denial of a claim similarly to a rejection, in that both determinations result in the WBO's providing written notice to the taxpayer stating that it declines to make an award and giving the basis for its determination. See id. paras. (b)(3), (c)(7) and (8). The WBO's denial of a claim indicates that "the IRS either did not proceed based on the information provided by the whistleblower * * * or did not collect proceeds" as a result of proceeding against

[*15] the taxpayer on the basis of the whistleblower's information.  Id. para. (c)(8).  A denial is a determination that is made after the WBO engages in some substantive consideration of the claim.  See Lacey v. Commissioner, 153 T.C. at 161-162.

C.     Standard and scope of Tax Court review of whistleblower awards

Section 7623(b)(4) provides that a "determination regarding an award" may be "appealed to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter)."  As we held in Kasper v. Commissioner, 150 T.C. 8, 21-23 (2018), in a whistleblower case our review is generally restricted to the administrative record, and we review the WBO's determinations not de novo but rather for abuse of discretion.  An abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law.  Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

D.     Review of stated grounds

In Lacey v. Commissioner, 153 T.C. at 169, we held that when we review for abuse of discretion the WBO's summary rejection of a claim, we review the WBO's stated grounds that the claim failed to meet certain threshold requirements. In that circumstance we do not sustain the rejection on the unstated grounds that there has been no administrative or judicial action initiated by, nor proceeds

[*16] collected by, the IRS as a result of the information that is the basis of the whistleblower's claim. That is, we review the determination that the WBO actually made, as reflected in its determination letter, and not a hypothetical determination that it did not actually make.

### E.    No power to order an audit

The Tax Court does "not review the IRS's decision whether to audit a target in response to a whistleblower's claim and * * * we have no authority to require the IRS to explain a decision not to audit." Id. at 164.

We now apply the foregoing principles to rule on the pending motions.

## III.    Mr. Worthington's motion

Mr. Worthington makes two contentions that we address here.

### A.    Failure to analyze

Mr. Worthington argues that the WBO failed wholesale to analyze his "supplemental information", by which he means his second Form 211 (and the documents he sent with it). He therefore asks us to "order strict compliance with the intent of congress and the IRS manual, to 'require the whistleblower office to analyze whistleblower claims' and analyze them under the proper IRS codes supported by form 211." For two reasons we reject this argument.

**[*17]**     1.     Lack of factual support

The record before us does not support Mr. Worthington's contention.  His motion asserts that--

> the agency did not analyze those claims once the supplemental information was provided.  By not doing the analytical requirement and doing them under the wrong statute, the Agency violated the IRS codes and the intent of  Congress in Public Law 109-432.
>
>      The agency record shows the final denial was based upon the decision of the agency employee made prior to the supplemental information. * * *  In fact they admit on the record to deciding not to use the information, while using a classification sheet that stated there was no supporting documentation.

That is, Mr. Worthington's assertion that the WBO ignored his supplemental information is simply an inference he makes from the Classification Sheet:

> [T]hat classification sheet stated "Allegations are not specific, credible, or are speculative.  allegations are purely speculative in nature."  That classification sheet did not include any analysis of the supplemental information.  In short, the agency record shows the agency used the previous classification prior to the supplemental information sheet to deny the claims and did not send the supplemental information for agency analysis as required by law and the Agency manuals.

Mr. Worthington thinks that because (in his view) the statements on the classification sheets are so wrong in light of his submission, the WBO must have ignored his submission.  It is not so.  The Classification Sheets and emails that we quote above show that the personnel who composed them did learn about the

**[*18]** Target from Mr. Worthington's submissions. But they evidently concluded that evidence was lacking to show key propositions about the Target's circumstance that would be necessary to any collection of tax proceeds. The administrative record does not support his contention that the WBO failed to consider his claim.

2. "Forcing an investigation"

Aware of this Court's holdings that we do not have power to order the IRS to perform an audit, see Lacey v. Commissioner, 153 T.C. at 164, Mr. Worthington insists that is not what he is attempting:

> This appeal is not about forcing an investigation, it is about forcing the analytical requirements of the statutes and the IRS manuals themselves, and under the right award threshold outlined in TRS [sic] 26 7623(b) not TRS 26 7623(a).

But what Mr. Worthington asks is that we "order strict compliance with the intent of congress and the IRS manual, to 'require the whistleblower office to analyze whistleblower claims' and analyze them under the proper IRS codes supported by form 211." As against the Commissioner's response that the WBO did analyze his claim, he replies in effect that we should order the WBO to really analyze it, and that we should oversee the WBO's performance to assure its "strict compliance". Though he evidently knows not to say it in so many words, what Mr. Worthington

[*19] is asking us to do is to order the IRS to examine the Target--and then to supervise that audit.  This we cannot do.

B.     Mandatory vs. discretionary award

Mr. Worthington also faults the WBO's final determination for labeling his claim not as a claim for a "mandatory" award under section 7623(b) but instead as a claim for a discretionary award under section 7623(a).  He contends: "Moreover, the agency has also now admitted the agency decision was improperly made pursuant to 7623(a) when it should have been made pursuant to 7623(b)."

Section 7623(b) provides for certain awards that the whistleblower "shall * * * receive" (i.e., so-called "mandatory" awards), and it applies only where "the proceeds in dispute [in an action between the IRS and the target taxpayer, see 26 C.F.R. sec. 301.7623-2(e)] exceed $2,000,000."  Sec. 7623(b)(5)(B).  For lesser amounts "the Secretary * * * is authorized to pay such sums as he deems necessary" (so-called "discretionary" awards) under section 7623(a). Mr. Worthington asserts (and for purposes of this opinion we assume) that the WBO construed his claim as discretionary under section 7623(a) because it reckoned incorrectly that less than $2 million was in dispute in connection with the claim.  But this assertion has no effect on our ruling on either party's motion.

**[*20]** We have held that the $2 million "in dispute" provision of section 7623(b)(5)(B) "is not a jurisdictional requirement" but, rather, is an affirmative defense upon which the Commissioner bears the burden of proof , see <u>Lippolis v. Commissioner</u>, 143 T.C. 393, 400 (2014), and which he has not pleaded here, <u>see id.</u> at 398. That is, where the WBO denies or rejects a whistleblower claim, we have jurisdiction to review its final determination whether or not the amount in dispute turns out to be $2 million. Consistent with that holding, the WBO issued to Mr. Worthington a determination that explicitly states: "This letter is a final determination for purposes of filing a petition with the United States Tax Court." We have jurisdiction to review that determination, and the Commissioner does not contend otherwise. Moreover, in a case like this one, where there has been no collection action, the WBO's analyzing the claim under section 7623(a) as opposed to section 7623(b) makes no practical difference, and we perceive no harm to Mr. Worthington as a result of the label used by the WBO.

We will deny Mr. Worthington's motion. The WBO did not fail to consider his claim, and we cannot grant his request that we order the IRS to use his information to examine the Target.

**[\*21]** IV.    The Commissioner's motion

We will deny the Commissioner's motion because it is unclear whether the WBO's final determination is a rejection of the claim or a denial of the claim, and the motion perpetuates that ambiguity.  As we noted above, "rejection" and "denial" are two distinct rulings.  According to the regulations, a "rejection" is a threshold ruling made on the basis of defects on the face of the claim itself, 26 C.F.R. sec. 301.7623-3(c)(7); and a "denial" indicates that "the IRS either did not proceed based on the information provided by the whistleblower * * * or did not collect proceeds" as a result of proceeding against the taxpayer on the basis of the whistleblower's information, id. subpara. (8).  The final determination issued by the WBO to Mr. Worthington fails to reflect this distinction.

A.    Inconsistency in the administrative record

The facts in the administrative record (set out in the "Background" above) fail to make a sufficient distinction between insufficiency on the face of the claim (which would warrant rejection of the claim) and a decision not to proceed with an examination (which would warrant denial of the claim).

1.    SB/SE's action

SB/SE personnel made the initial classification of Mr. Worthington's claim and recommended "rejection" on its face rather than "denial" on its merits.  The

[*22] Commissioner states in his motion that he "disagrees with the implication in Lacey that only the IRS Operating Divisions can make a decision not to proceed with an action. 153 T.C. No. 8, slip. op. at *36." But then, in order to assert that the determination at issue here did involve an IRS operating division's (unreviewable) decision not to audit, the Commissioner argues that "SB/SE Classifier Holt reviewed the claim and declined to refer the claim for examination and instead decided that the IRS should not further investigate petitioner's claim." Thus, he seems to follow the flaw he sees in Lacey in order to argue that if the decision was made by SB/SE, then it must be an unreviewable audit decision on the merits.

Lacey did observe an essentially binary regime, suggested in the regulations and borne out in the facts in Lacey, in which the WBO made the initial threshold judgments about defects on the face of the claim and then an operating division made the decision whether or not to audit. However, after the occurrence of the facts on which our Opinion in Lacey was predicated, the claim evaluation function of the WBO was realigned: The operation of this function is now shared by the SB/SE Operating Division, which is an operating division of the IRS. Specifically, the more recent Internal Revenue Manual pt. 1.1.26.1.3.5 (Jan. 11, 2018), states as follows for "Initial Claims Evaluation":

- 23 -

[*23]        (1)  Effective July 10, 2016, * * * the Initial Claim Evaluation
    Team (ICE) [of the WBO], was realigned to Small
    Business/Self-Employed (SB/SE).  ICE will continue to act as the
    primary receipt and control function responsible for performing
    whistleblower claim intake, monitoring, [and] award processing * * *.

        (2)  The Whistleblower Office has strategy, policy,
    administration, oversight, review, and reporting responsibility for the
    IRS Whistleblower Program. * * *

        (3)  SB/SE has operational responsibility for the ICE Unit.
    * * *

We do not consider it improper for the IRS to reorganize itself to allocate the

initial classification function to SB/SE and to allocate some audit decisions to the

WBO.  See Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432,

sec. 406(b)(1)(B), 120 Stat. at 2960 (providing that the WBO "shall analyze

information received from any individual * * * and either investigate the matter

itself or assign it to the appropriate Internal Revenue Service office").

If such an allocation of duties is permissible, then the issue is not which IRS

office made the determination but rather what the nature of that determination was.

The administrative record in this case does not show Ms. Holt as the decision-

maker.  Her function was that of a classifier making the threshold evaluation of the

sufficiency of the claim on its face, and it was evidently Ms. Meis in the WBO

who overruled her initial recommendation of referral to the Criminal Investigation

[*24] division and, in effect, told her to re-do her Classification Sheet and recommend rejection on the grounds that the claim was speculative (consistent with rejection). Ms. Holt did so, and SB/SE's action was therefore consistent with rejection (not denial) of the claim.

### 2. The WBO's action

However, Ms. Meis (the WBO official who gave Ms. Holt that instruction) had herself done "research" outside the claim and urged Ms. Holt to do more "research" herself. Such research seems to be inconsistent with what the regulations provide concerning a threshold rejection, and this "research" by both SB/SE and the WBO tends toward characterizing the subsequent action as a denial. However, if the determination was a denial, not an action based solely on the claim, then the information generated in the research should have been included in the administrative record. Evidently it was not. The court opinion that Ms. Meis quotes in her email seems to be missing from that record (except for the excerpt that she quotes). So it is difficult to characterize the process set out in the administrative record as leading to either rejection or denial.

**[\*25]**        3.        The WBO's final determination

Our review is made somewhat simpler, however, by the principle that, as we stated above, see supra pt. II.D, what we review is the actual determination reflected in the WBO's letter.  When we look to the final determination letter sent to Mr. Worthington, we see an apparent self-contradiction.  It states:  "The claim has been <u>rejected</u> because the IRS <u>decided not to pursue the information</u> you provided."  (Emphasis added.)  "[D]ecid[ing] not to pursue the information" would seem, under the regulations,[2] to indicate a <u>denial</u>; but the letter says the claim is being <u>rejected</u>.  This inconsistency in the final determination letter likewise appears in the Commissioner's motion, which we now discuss.

B.        Inconsistency in the motion

The motion asks us to hold that "the Whistleblower Office did not abuse its discretion in <u>rejecting petitioner's claim</u> for award" and also asserts that "the Whistleblower Office did not abuse its discretion in <u>denying petitioner's claim</u> for award".  (Emphasis added.)  This inconsistency recurs throughout the motion.

---

[2]See 26 C.F.R. sec. 301.7623-3(c)(8) (providing for "denial" where "the IRS * * * did not proceed based on the information provided by the whistleblower").

**[*26]**     1.     Rejection in the motion

On the one hand, the motion frequently repeats that the WBO "rejected" Mr. Worthington's claim.  It asserts--consistent with a rejection--that various personnel determined that the claim was "speculative", that its "[a]llegations are not specific, credible, or are speculative", that it "fail[ed] to include specific and credible information to support a potential tax violation, as well as * * * fail[ed] to provide documentation to support the claim".

If "rejection" is the correct characterization, then we would need to decide whether the WBO abused its discretion in making a threshold determination that the claim was speculative or failed to allege a tax issue.  But no coherent determination of rejection was stated by the WBO in its final determination nor defended by the Commissioner in his motion.  The Commissioner has not made an argument justifying a threshold rejection.

    2.     Denial in the motion

On the other hand, the motion also makes assertions consistent with a denial of the claim, stating for example:

> 30.     Respondent did not proceed with an administrative or judicial action against the purported taxpayer and did not collect any proceeds based on petitioner's information. * * *

[*27] To the same effect, the Commissioner's reply seems to presuppose a denial when it states: "[T]he SB/SE Operating Division * * * declined to commence an audit." Consistent with a denial, the motion also asserts:

> [T]he Whistleblower Office reviewed petitioner's claim and sent the claim to the SB/SE Operating Division for investigation. * * * SB/SE Classifier Holt reviewed the claim and declined to refer the claim for examination and instead decided that the IRS should not further investigate petitioner's claim. * * * SB/SE Classifier Holt conveyed the decision not to pursue petitioner's claim to the Whistleblower Office. * * *

But the motion then seems to veer in order to state: "Therefore, the Whistleblower Office <u>rejected</u> petitioner's claim". (Emphasis added.) In the next sentence, however, the motion rights itself and states: "Because the undisputed material facts demonstrate the Whistleblower Office did not abuse its discretion in <u>denying</u> petitioner's claim for award, this Court should grant respondent's motion." (Emphasis added.) We cannot grant the Commissioner's motion, because we cannot discern in it--nor in the WBO's final determination--a coherent ruling consistent with the regulations and supported by the administrative record.

The problem, we stress, is <u>not</u> simply that of a poorly drafted determination. If the final determination made a "rejection" that it explained poorly but that the administrative record justified, then we might be able to sustain the rejection. Or if the final determination made a "denial" that it explained poorly but that the

**[*28]** administrative record justified, then we might be able to sustain the denial.[3]

But in this instance we cannot tell what the WBO actually determined, and this unclarity in the final determination letter corresponds to a lack of clarity that arose in the preceding administrative process and that recurred thereafter in the Commissioner's motion. We will therefore deny the motion and will order the parties to show cause why the case should not be remanded to the WBO for further consideration.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.

---

[3]<u>Cf.</u> <u>Tourus Records, Inc. v. DEA</u>, 259 F.3d 731, 739 (D.C. Cir. 2001) ("Although the notice by which the DEA denied Tourus' application to proceed in forma pauperis was insufficient to satisfy the requirements of the APA, the internal memoranda upon which it was based are sufficient"). By selective quotation and generous use of ellipses, we could edit the WBO's final determination letter to appear to state either a rejection or a denial and could then excerpt sentences from the administrative record as a justification for the approach we had chosen. But <u>Tourus</u> does not suggest this method, which would constitute not a discernment of the WBO's actual determination but rather a concoction of our own.